# Commonwealth *v.* Myma, Appellant.

*Criminal law—Murder—Interrogation of witnesses by judge— Trial—Judge's examination of witnesses—Degree—Communication between judge and jury—Challenge for cause—Appeal.*

1. A judge in the trial of a case has the right to interrogate witnesses, but he should do so only when he conceives the interest of justice requires it, and such examination should not be extended.

2. A judge should not indicate an opinion on the merits, a doubt as to a witness's credibility, or do anything to indicate a leaning to one side or the other, without explaining to the jury that all these matters are for them.

3. It is proper for a judge to interrogate a juror when challenged for cause.

4. An appellate court cannot consider a complaint as to a trial judge's manner in conducting a trial, unless what he says discloses it.

5. A trial judge in a murder trial cannot be accused of taking away from the jury the right to determine the degree of guilt, because he charges that if the jury is convinced defendant wilfully, deliberately and premeditatedly murdered deceased, or unlawfully and maliciously killed him in the perpetration of a robbery, the Commonwealth will be entitled to a verdict of murder of the first degree, and this is especially so where the judge repeatedly instructs the jury that it is for them to determine the degree of the crime.

6. Where a jury sends written inquiry to the judge as to the law, the judge cannot be convicted of error in replying that if the jury insists upon an answer, he must send for the defendant, who must be present when instructions are given.

7. If a prisoner, after conviction, alleges in a petition for a rule to take depositions of jurors to show that there were communications between the judge and jury not in his presence, and he does not follow the allegations in the petition with specific statements, and the rule is discharged, he cannot complain of such action of the court on appeal.

*Criminal law—Murder—Insanity—Amnesia—Evidence—Burden of proof.*

8. Where the defense in a murder case is a form of insanity called amnesia, the burden of establishing such defense rests on the prisoner throughout the trial.

Argued October 8, 1923.   Appeal, No. 330, Jan. T., 1923, by defendant, from judgment of O. & T. Lackawanna Co., Oct. T., 1922, No. 18, on verdict of guilty of murder of the first degree, in case of Commonwealth v. John F. Myma, alias Frank B. Duggan.   Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Indictment for murder.   Before MAXEY, J.

The opinion of the Supreme Court states the facts.

Verdict of murder of the first degree, on which sentence was passed.   Defendant appealed.

*Errors assigned* were various rulings and instructions sufficiently appearing by the opinion of the Supreme Court, quoting evidence but not bills of exceptions, or referring to record by pages.

*James J. Powell,* with him *Sidney Grabowski,* for appellant, cited, as to the conduct of the trial judge: Boggs v. Tea Co., 266 Pa. 428.

As to charge on degree: Com. v. Ferko, 269 Pa. 39; Com. v. Fellows, 212 Pa. 297; Com. v. Frucci, 216 Pa. 84.

As to written correspondence passing between the trial judge and jury: Sommer v. Huber, 183 Pa. 162; Com. v. Corsino, 261 Pa. 593; Com. v. Green, 126 Pa. 531.

*Harold A. Scragg,* District Attorney, with him *Robert P. Silverstein,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE KEPHART, January 7, 1924:

John F. Myma, the appellant, was convicted of murder of the first degree; the record shows all the essential ingredients of that crime.   Wolf Glou was found lying in a pool of blood behind a counter in his jewelry store in Scranton, unconscious and dying.   An iron bar covered with blood, used in inflicting the mortal wound, lay on the floor near him, as also his keys and empty pocket-

book. The safe and the store were ransacked. He died within a few hours after being removed to a hospital.

Myma, shortly after completing a third term of imprisonment at the Huntingdon reformatory, went to Scranton, and a day or so later was seen loitering about Glou's jewelry store. The following day Glou's son-in-law entered the store about five-thirty in the afternoon, saw Myma in the rear and inquired for Glou. Defendant replied Glou was across the street at a lunch room, and he was in charge of the store. During their conversation blood was noticed on Myma's shirt. Meanwhile appellant kept advancing toward the door, and suddenly, brushing past the witness, rushed out of the room and north on Penn Avenue. Pursuit followed, and after a chase of half a mile he was captured. Nine gold watches and a silver match box, identified as the property of Glou, were found in his possession. On the way to the city prison Myma stated he had "killed a Jew."

Defendant does not deny the killing, but endeavors to escape responsibility through his own evidence, and asks the jury to believe he was suffering from a form of insanity known as amnesia, superinduced by narcotics, stating he had taken eighty grains of cocaine and twenty grains of morphine in about forty-eight hours.

The first five assignments of error cover charges of overzealousness by the trial judge in the prosecution of the case. They are not within our rules, but as they embody the chief ground of complaint we will consider them. In some jurisdictions this charge, if true, constitutes fundamental error, considered on review without exception or proper assignments.

Appellant insists the trial judge unduly questioned a juror and a number of witnesses to his prejudice. A judge in a jury trial has a right to interrogate witnesses. It sometimes becomes his duty to do so, even to the point of recalling a witness to supply an omission of proof on a material point: Boggs v. Jewell Tea Co., 266 Pa. 428, 434; State v. Jackson, 87 S. C. 407, 69 S. E. 883; Ly-

can v. People, 107 Ill. 423. But a judge may so conduct an examination as to make it an abuse of discretion, requiring a new trial.

Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires. It is better to permit counsel to bring out the evidence and clear up disputed points on cross-examination unaided by the court; but where an important fact is indefinite or a disputed point needs to be clarified, the court may see that it is done by taking part in the examination. The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved. The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box and at the counsel table. To depart from the clear line of duty through questions, expressions or conduct, contravenes the orderly administration of justice. It has a tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence. Judges should refrain from extended examination of witnesses; they should not, during the trial, indicate an opinion on the merits, a doubt as to the witnesses's credibility, or do anything to indicate a leaning to one side or the other, without explaining to the jury that all these matters are for them.

We suggest in such cases the adoption of the canons of judicial ethics recently submitted by its committee to the American Bar Association: "He [the judge] may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity, but he should bear in mind that his undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on his part toward witnesses, especially those who are excited or terrified by the unusual circumstances of a trial, may

tend to prevent the proper presentation of the cause, or the ascertainment of the truth in respect thereto.

"Conversation between the judge and counsel in court is often necessary, but the judge should be studious to avoid controversies which are apt to obscure the merits of the dispute between litigants and lead to its unjust disposition. In addressing counsel, litigants, or witnesses, he should avoid a controversial manner or tone.

"He should avoid interruptions of counsel in their arguments except to clarify his mind as to their positions, and he should not be tempted to the unnecessary display of learning or a premature judgment": Canon 15, 9 Am. Bar Assn. Jour. 450.

We have carefully examined all the interruptions by the trial judge. It is quite proper for the court to interrogate a juror when challenged for cause; otherwise there would be great difficulty in filling the box. The juror here particularly needed such examination. Mazie, a witness, having testified defendant had blood on his shirt, the court's inquiry was, "On what part of it?" This fact did not appear from either counsel's examination. When the same witness identified the watches, the judge asked where he had seen a particular watch and how long before it had been seen in the decedent's showcase? This was not error.

After the officer detailed defendant's actions and conversation immediately following the arrest, the interrogation was more favorable to defendant than otherwise. His further examination of Dr. Caldwell, while longer than necessary, was for the purpose of demonstrating the condition of a mind supposedly under the influence of narcotics. When we read this expert's evidence, we were much in doubt on this important phase of the case, as probably was the jury. The examination should have been shortened, but, as recorded, did defendant no harm. The physician was able to answer all questions, the net result of which had a tendency to enlighten the jury on this important point.

Much stress is laid on the judge's manner in conducting these examinations. It is impossible to record the demeanor of the judge when questions are asked by him. A hostile form of mind cannot be recorded unless the questions themselves disclose it; it is impossible to note either the inflection of the voice, the manner of the questioner, or what is generally termed the "atmosphere" of the trial.

We have most carefully examined all the questions with a view of ascertaining any supposed hostility on the part of the trial judge, and we are all of opinion that, as far as this record discloses, such hostility did not exist. These assignments are overruled.

Appellant urges the court took away from the jury its right to determine the degree of guilt. We cannot so read the charge. Excerpts from it, some of which are illustrations used to clarify the law expounded, taken by themselves, might be so considered, but, throughout the charge, and in his opening and closing statements, he clearly left to the jury its undoubted right to fix the degree. The trial court stated to the jury, if it was convinced defendant wilfully, deliberately and premeditatedly murdered deceased, or unlawfully and maliciously killed him in the perpetration of a robbery, the Commonwealth would be entitled to a verdict of murder in the first degree. This did not take away the right to fix the degree, notwithstanding what the Commonwealth was entitled to. In the court's opening statement the jury was instructed to "determine by your verdict, if you find defendant is guilty of murder whether the degree be that of first degree or second degree." And again, "The jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder of the first or second degree." Finally, and as his concluding words, "If the facts point to a verdict of acquittal, acquit him; if they point to a verdict of murder of the first degree, say so by your verdict; if they point to some other verdict, say that by your verdict." At other places

in the charge its right to find the degree was made clear. There is no substantial difference on the point discussed between this case and Commonwealth v. Lessner, 274 Pa. 108, 114. The jury, in Commonwealth v. Ferko, 269 Pa. 39, was at no time instructed it was at liberty to fix the degree. See Com. v. Sheets, 197 Pa. 69, and similar cases. The sixth assignment is overruled.

It is urged written instruction was sent by the judge to the jury. This it is stated was not done in the presence of defendant, and without his knowledge. The only writing between the court and the jury was a memorandum sent to the judge, the material part of which is as follows: "In the event of an agreement by the twelve jurors that the defendant is guilty, would a verdict of guilty of murder of the first degree with the recommendation of extreme mercy of the court be permissible? John Thomas, foreman." To this the court made reply "If you insist on an answer to your question I will have to send for the defendant, as he must be present at every stage of the proceedings and particularly when the court is giving the jury any instructions." This was about the only answer that could have been given.

A request for such additional instruction was made, the jury was brought into court, and in the presence of defendant additional instructions were given. It was not suggested at the conference between the trial judge, foreman of the jury, defendant's counsel and the district attorney that this was not all the correspondence. A petition to take depositions to bring out other supposed correspondence was presented before the full bench of that county, and the matter was left open for a more specific statement as to what was intended to be proven. No further steps were taken by defendant's counsel, and the rule was discharged. Without such statement the court would not be warranted in subjecting the jury to an examination as to other possible papers, with the inevitable inquiry as to their deliberations. It was defendant's duty to set forth with particularity a detailed specification of facts to secure a deposition. It is well

known jurors repeatedly ask for newspapers and other things, and make inquiries concerning personal matters, in no way connected with the case or influencing the trial. The assignments bearing on this point are overruled.

The defense was that form of insanity called amnesia (incorrectly termed aphasia by the Commonwealth in Com. v. Morrison, 266 Pa. 223 and followed there by this court). The burden of establishing such defense rested on him throughout the trial. See Com. v. Dale, 264 Pa. 362. The case was carefully tried and submitted to the jury in a fair and impartial charge.

The judgment is affirmed and it is directed that the record be remitted for the purpose of execution.