Commonwealth *v.* Brown, Appellant.

Argued November 24, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

54

R. *Barclay Surrick*, Assistant Public Defender, with him *Mervyn R. Turk*, Assistant Public Defender, for appellant.

*Anna Iwachiw Vadino*, Assistant District Attorney, with her *Ralph B. D'Iorio*, Assistant District Attorney, and *Stephen J. McEwen, Jr.*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, April 22, 1970:

This is an appeal from a judgment of sentence to life imprisonment imposed by the Court of Common Pleas, Criminal Division, of Delaware County upon Mary Brown (defendant) following her conviction by a jury of first-degree murder, arising from circumstances involving the death of her husband, Tony Brown.

In the early evening of April 11, 1967, the Police Department of Ridley Township received a telephone call from a woman who gave her address and stated she thought she had just killed her husband. Two officers responded to that call, went to the address given, found the apartment unlocked and, upon asking if anyone had called the police, the defendant, then standing in the apartment hallway, answered, "Yes, in here." Upon entering the apartment, the officers found Tony Brown lying in bed in the bedroom. He was still alive, but unconscious, and, in addition to other wounds, had two deep wounds on the left side of his head. The offi-

cers also found therein an axe upon which there was blood. Tony Brown died the next day.

Defendant was taken by one of the officers, in the police car, to the police station where, after being warned of her constitutional rights, she made a statement to another police officer. In this statement, the defendant said that she had taken the axe from a closet in the living room, had hit the victim with it, she did not remember how many times, while the victim was lying in bed, that she hoped the victim would die and that, if she had known he was still alive, she would not have called the police.[1]

At the trial, the defendant took the stand and testified that the victim, a mean person, had in the past inflicted bodily injury upon her,[2] and claimed that she did not remember what happened,[3] and that she was suffering from amnesia at the time of the occurrence.[4]

Five issues are raised upon this appeal: (1) whether oral statements, allegedly made to the police officer while en route to the police station, were admitted into evidence in violation of her constitutional rights; (2) whether the court erred in instructing the jury that it *may* return a not guilty verdict if defendant's guilt had not been established beyond a reasonable doubt; (3) whether the court erred in its charge upon the presumption of malice and the presumption of murder in the second degree; (4) whether a court order requiring the accused to submit to examination by a psychia-

---

[1] Prior to trial, a *Jackson v. Denno* hearing was held on the voluntariness of this statement. The admissibility into evidence of this statement is not raised upon this appeal.

[2] Other defense witnesses also so testified.

[3] Upon cross-examination, defendant stated: "I'm not saying it didn't happen. I don't remember."

[4] A doctor called by the defense, although conceding defendant's legal sanity at the time, testified that her amnesia was genuine. A doctor called by the Commonwealth disputed the genuineness of the amnesia.

trist for the Commonwealth violated her constitutional rights; (5) whether the court erred in questioning a Commonwealth witness concerning an answer which he gave upon cross-examination.

## I.

The police officer who took the defendant to the police station testified, upon direct examination, as follows: "Q. Now, on the way to the police station, did she say anything to you or did you say anything to her? A. Yes, I—almost in the exact words, I said, 'Mary, Tony looks like he's in pretty bad shape.' And she said, 'I hope he dies.' And I said, 'Mary, you shouldn't talk like that because if he dies, you are going to go to jail.' She said, 'I don't care, I hope he do die.'" It is contended that these statements, made without the warnings mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), should not have been admitted into evidence through the direct examination of the police officer. The crux of this contention is whether these statements were *volunteered* or the result of an "interrogation" or "questioning" by the police officer which should have been preceded by the *Miranda* warnings. Volunteered statements made by an accused, without warnings, are not barred by the Fifth Amendment to the United States Constitution and the admissibility of *volunteered* statements is not affected by the *Miranda* warnings. *Commonwealth v. Simala*, 434 Pa. 219, 226, 252 A. 2d 575, 578 (1969); *Commonwealth ex rel. Vanderpool v. Russell*, 426 Pa. 499, 502, 233 A. 2d 246, 247 (1967); *Commonwealth v. Eperjesi*, 423 Pa. 455, 460-61, 224 A. 2d 216, 219-20 (1966).

Undoubtedly, at the time the defendant allegedly made these statements to the officer, she was "in custody" and had become the focus of the police investiga-

tion into the facts concerning the wounds inflicted on her husband.

It is for us to determine whether that which transpired in the police automobile constituted an "interrogation" or a "questioning" of the accused of the nature and character contemplated by the rulings in *Miranda* and in *Escobedo v. Illinois*, 378 U.S. 478, 490-91, 84 S. Ct. 1758 (1964). A reading of the instant record clearly indicates that the defendant was not being "interrogated" or "questioned" within the meaning of the *Miranda* and *Escobedo* rulings and that her statements to the police officer were spontaneous and voluntary. The statements of the police officer to the defendant which brought forth the latter's statements were in no wise inquisitive but simply observations as to the victim's condition.

However, even if the statements were not volunteered and spontaneous, defendant's counsel made no objection whatsoever at the trial to the admissibility of these oral statements. The absence of any objection to the admission of these oral statements constituted a waiver of error, if error existed and, certainly, if error existed, it was not fundamental or basic viewed in the light of this record. *Cf. Commonwealth v. Williams*, 432 Pa. 557, 248 A. 2d 301 (1968). Moreover, it is noted that no question is now raised as to the admissibility of the statement given by the defendant, after proper and appropriate warnings, to the police lieutenant in the police station, and in such statement the defendant said practically that which she had previously stated orally to the police officer en route to the police station. Under the instant circumstances, we fail to see how the error alleged in the admissibility of the oral statements, *if* such was error, resulted in any prejudice to the defendant or in an unfair trial and a deprivation of justice.

For the first time, at the appellate level, the defendant, in connection with this contention, urges that she was ineffectively represented in that her counsel failed to object to the admission of the oral statements at trial. The record is barren of any facts such as would justify a finding by this Court that defense counsel ineffectively represented defendant. See: *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A. 2d 349 (1967).

## II.

The defendant also seeks to establish error by taking a small portion of the court's jury instructions out of context. At one point in the very lengthy charge, the Court stated: "In this case you *may*, of course, return a verdict of not guilty, if the guilt of the accused has not been shown beyond a reasonable doubt." (Emphasis added) The thrust of this argument is that the court erred in not using the word *"must"* instead of *"may."*[5]

[5] In other parts of the charge, the court said:

"[T]he defendant here is presumed to be innocent and it is in the hands of the Commonwealth to rebut that presumption and prove to you that defendant is guilty of crime charged and it *must* prove this beyond a reasonable doubt." (Emphasis added)

"[W]hen you are in that state of mental reluctancy in reaching a conclusion you *must* find facts most favorable to defendant . . . ." (Emphasis added)

"The existence of a presumption does not release the Commonwealth of its primary duty of proving defendant's guilt, in all grades and degrees of the crime and in respect to each and every component element, including malice beyond a reasonable doubt.

"You must remember that the Commonwealth has the burden of proving every essential element necessary of the offense charged beyond a reasonable doubt and this includes proof that the killing was not self-defense.

"[I]f you conclude that the defendant killed under circumstances justifying her belief that her own life would not otherwise have been saved, then you should acquit the defendant."

An examination of the charge of the court *in its entirety,* clearly and unequivocally demonstrates that the jury was adequately instructed that a reasonable doubt as to the guilt of the defendant would and must work her acquittal. Moreover, the court affirmed and read to the jury a point for charge submitted by the defendant which read as follows: "The burden of proof in this case is exclusively and continually upon the Commonwealth and if one of the facts which constitutes an element of the crime with which the defendant is charged is not proved beyond a reasonable doubt, there cannot be a conviction and the verdict *must* be not guilty . . . . [I]f the jury have any reasonable doubt as to any material circumstances sought to be proved by the Commonwealth, the verdict should be not guilty . . . ." (Emphasis added) This contention of defendant is without any merit whatsoever.

## III.

It is next urged that the court erred in charging the jury that a voluntary killing without justification or excuse is presumed to be murder. The court instructed the jury, *inter alia,* as follows: "It is for you to say whether this was a case of voluntary manslaughter and we leave that entirely to you. If you find that this was a killing by the defendant resulting from a voluntary act without justification or excuse, the presumption is that the killing was malicious. Therefore, being presumed to be malicious, the killing would be presumed to be murder. Although the law states that all such killings would be presumed to be murder, the presumption does not rise higher than second degree murder. In all unlawful killings without justification or excuse where the act of the slayer is voluntary, the presumption is that it is murder of the second degree

only."[6] The defendant relies upon *Commonwealth ex rel. Johnson v. Myers*, 402 Pa. 451, 167 A. 2d 295 (1961), which held to be erroneous a charge that "all felonious homicide is presumed to be murder in the second degree." In *Commonwealth v. Jordan*, 407 Pa. 575, 588-89, 181 A. 2d 310, 317 (1962), we disapproved *Johnson*, stating: "What was said in Johnson is not the law of Pennsylvania, has no decisional basis, and is, therefore, disapproved. Malice is presumed not only in cases of 'felonious homicide' but also in all situations wherein the Commonwealth has made out a prima facie case of willful, deliberate and premeditated killing." In line with our ruling in *Jordan*, the charge of the court was proper.

## IV.

The defendant next urges that the order of the court below appointing, at the Commonwealth's behest, a psychiatrist to examine the defendant was erroneous in that it did not specifically provide that the defendant was not to be compelled to answer any questions posed to her by the Commonwealth's examining psychiatrist and, thus, her constitutional rights were violated.

In *Commonwealth v. Byrd*, 421 Pa. 513, 219 A. 2d 293, *cert. denied*, 385 U.S. 886 (1966), we held that a court order requiring a person accused of and indicted for murder to submit to a neuropsychiatric examina-

---

[6] The court followed this instruction by stating: "Now, there is some danger inherent in a layman's consideration of a presumption. The existence of a presumption does not relieve the Commonwealth of its primary duty of proving the defendant's guilt, in all grades and degrees of the crime and in respect to each and every component element, including malice, beyond a reasonable doubt. The presumption of malice does not arise until the Commonwealth has made out a prima facie case of felonious homicide, which is the killing of a human creature without justification or excuse of any kind,"

tion by a psychiatrist selected by the Commonwealth was not violative of the constitutional provision against self-incrimination, provided that the accused be not compelled to answer any questions propounded to the accused by the psychiatrist making the examination. See also: *Commonwealth v. Musto,* 348 Pa. 300, 35 A. 2d 307 (1944).

To determine this issue we must look to the factual posture presented of record. The defendant petitioned the court for the appointment of a psychiatrist to aid in the preparation of her defense. The court allowed the defendant the services of a psychiatrist. The Commonwealth then, in the protection of its interests and in the preparation of its case to meet a possible defense of insanity,[7] sought and obtained an order directing the defendant to submit to an examination by a psychiatrist selected by the Commonwealth.

While the order of court requiring the defendant to submit to an examination by a Commonwealth-selected psychiatrist did not specifically state that the defendant was not required to answer questions which might incriminate her, the fact is that defendant was at all times, and particularly during the examination of defendant by the Commonwealth-appointed psychiatrist, represented by counsel to protect her interests and to preserve her right not to be subjected to self-incrimination.

While it would certainly have been preferable had the court below, in its order of appointment, provided specifically that the defendant did not have to answer questions, the instant record is barren of any evidence demonstrating how the defendant was prejudiced by the omission of such provision from the order, especially

---

[7] It will be noted that under the present state of our law the defendant in a criminal case is under no duty to inform the Commonwealth of reliance on insanity as a defense.

when the examination was conducted in the presence of defense counsel.

## V.

Lastly, the defendant claims that the court below overstepped its bounds in questioning Officer Lincoln, who was the police officer to whom, allegedly, during the ride to the police station, the defendant had made the oral statements indicating a desire on her part that her husband die.

At the defendant's preliminary hearing, Officer Lincoln was cross-examined as to whether any "statements" were made to him by the defendant en route to the police station and he stated that none were made. At the trial, on direct examination, he testified to the oral remarks which, allegedly, had been made to him by the defendant. Defense counsel then cross-examined Officer Lincoln, and the following took place: "Q. . . . Now, I am asking you which is correct, the statements you are making today or the statements you made at the preliminary hearing some nine days after this? A. Excuse me. I took it, I would say the last time I said no, that you asked me if she made a statement as to the facts leading up to the incident or what not. We don't question on that, we just arrest them and turn them over to our detective bureau. This—this statement she made in the car was normal conversation, as far as I was concerned. . . . THE COURT: You are now, as I understand it, and you correct me if I am wrong, stating that when Mr. Shipman questioned you, you used the word statement. You interpreted that to mean a confession or something against interest having to do with the commission of the offense? THE WITNESS: Yes. THE COURT: Not remarks? THE WITNESS: Yes, sir. THE COURT: All right." It is obvious that what the court below was trying to elicit was a

clarification of what Officer Lincoln meant by the word "statement." In *Commonwealth v. Watts,* 358 Pa. 92, 96, 56 A. 2d 81, 83 (1948), this Court said: "It is always the right and sometimes the duty of a trial judge to interrogate witnesses, although, of course, questioning from the bench should not show bias or feeling nor be unduly protracted." There is no evidence whatsoever of any bias or feeling or undue protraction of the questioning by the court below. What the court below was simply trying to do was to clarify for the jury just what Officer Lincoln meant by the word "statement."

In accordance with our duty, we have examined the entire record in this case. We find no evidence that any constitutional rights of the defendant were violated and, on the contrary, we find that the defendant received a fair and impartial trial.

Judgment affirmed.