Commonwealth *v.* Lanza, Appellant.

Argued April 10, 1974. Before WATKINS, P. J., JA-
COBS, HOFFMAN, PRICE, VAN DER VOORT, and SPAETH,
JJ. (CERCONE, J., absent.)

*John H. Corbett, Jr.,* Trial Defender, with him *John
J. Dean,* Chief, Appellate Division, and *George H. Ross,*
Public Defender, for appellant.

*Robert L. Campbell,* Assistant District Attorney,
with him *Robert L. Eberhardt,* Assistant District At-
torney, and *Robert W. Duggan,* District Attorney, for
Commonwealth, appellee.

OPINION BY HOFFMAN, J., June 21, 1974:

In this appeal from a judgment of sentence for
armed robbery and possession of a firearm without a
license, appellant contends that the trial judge's ques-
tioning of prosecution witnesses prejudiced his right to
a fair and impartial trial by jury.

The prosecution's case rested largely upon the testi-
mony of one of the victims of the robbery which alleg-
edly occurred on July 7, 1972. On that evening the vic-
tim, Mr. Musiol, and a companion, Mr. Dillingham,[1]

---

[1] Dillingham was not called as a witness at trial.

were playing pool at a bar in McKees Rocks, Pa., when one of the appellant's co-defendants asked whether the victims knew where some marijuana could be obtained. Musiol answered that he did not and shortly thereafter, left the bar with Dillingham. As the victims were about to enter Musiol's car, appellant allegedly approached and pressed a gun to the back of Musiol's head and stated: "Don't make a move because my Roscoe is loaded." The victims were forced into the car and Musiol was directed to drive to a baseball field.

On the way to the field, the defendants searched the two victims and took $135.00 from Musiol. Not satisfied with this, the defendants demanded that Musiol produce more money. Appellant allegedly placed his belt around Dillingham's neck and told Musiol that if he ever wanted to see Dillingham again, he better come up with more money.

Musiol then drove to his parents' house to obtain more money. When he arrived there, he ran from the car to a neighbor's house and called the police. The defendants then fled with Dillingham still in the car. When police officers spotted it, they blocked the road and stopped the car. The police saw a revolver being thrown from the car and Dillingham jumping from the car crying for help.

The defendants took the stand and gave a different version of the events. They testified that they left the bar with Musiol and Dillingham in order to purchase marijuana, that Dillingham pulled a gun on them demanding the purchase money, that they were able to disarm him after Musiol left the car, and were on their way back to the bar when stopped by the police.

We agree with appellant that "the practice of a judge entering into the trial of a case as an advocate is [to be] emphatically disapproved . . . and that his undue interference, impatience, or participation in the examination of witnesses" may tend to prevent the prop-

er and unbiased presentation of the case. *Commonwealth v. Myma,* 278 Pa. 505, 508, 509, 123 A. 486 (1924). A trial judge must be ever cautious that his questioning of witnesses not show bias or a belief in the credibility of particular witnesses. *Commonwealth v. Miller,* 442 Pa. 95, 275 A. 2d 328 (1971). However, a trial judge has the inherent right, and, at times, the duty to question witnesses to clarify existing facts and to elicit new information. *Commonwealth v. Brown,* 438 Pa. 52, 63, 265 A. 2d 101 (1970). Where these are the objectives of the questioning and it is not unduly protracted or conducted in a biased manner, the trial judge's discretion in questioning witnesses will not be found erroneous. *Commonwealth v. Gockley,* 411 Pa. 437, 192 A. 2d 693 (1963).

The trial judge in the instant case questioned both prosecution and defense witnesses concerning the sequence of events on the night of the crime. Although the questioning of the victim was longer than that of other witnesses, the content and tenor of the questioning of all witnesses indicate an attempt to clarify the events. We can find nothing in the record to sustain appellant's contention that the trial judge was attempting to convey an impression that he was favorably disposed to the prosecution's version of the crime. Of the 485 pages of trial testimony, the trial judge's questioning of witnesses consisted of only 12 pages. In each instance, defense counsel was given an opportunity to interrogate the witnesses. Under the circumstances, we do not believe that appellant's rights were in any way prejudiced by the judge's questions.

Judgment of sentence affirmed.

CERCONE, J., did not participate in the consideration or decision of this case.