362 A.2d 348

**COMMONWEALTH of Pennsylvania**

v.

**James L. ELMORE, Appellant.**

Superior Court of Pennsylvania.

June 28, 1976.

Eugene A. Kestenbaum, Asst. Public Defender, Doylestown, for appellant.

Stephen B. Harris, First Asst. Dist. Atty., P. Schenck, Doylestown, for appellee.

Befor WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the trial court erred in conducting vigorous direct examination of one of the Commonwealth's witnesses which led to the introduction of prejudicial testimony.

On August 23, 1974, the Bucks County Grand Jury returned indictment number 1514 charging appellant with a March 4, 1974 burglary. After the court denied appellant's motion to suppress, a jury was selected on November 7, 1974. On November 11, 1974, the jury found appellant guilty as charged. Post-trial motions were denied on February 11, 1975. On April 11, 1975, appellant

was sentenced to a term of imprisonment of three to twenty-three months.

At trial, the following facts were developed. One witness, who was unable to make an identification at any point during the proceedings, testified that she returned home on March 4, 1974, and discovered that her apartment was being burglarized. She left her apartment and told Mrs. Keyes, a neighbor who was in the hallway of the apartment building, that "I'm being robbed." Mrs. Keyes saw two men running from the rear of the building; she gave chase, during which time she viewed the suspects. The only other Commonwealth witness was the arresting officer, who testified that the police dusted for fingerprints but found only smudges, indicating that the burglars wore gloves. The only testimony elicited by the prosecutor from the officer on the subject of the witness's identification was the following: "Q. Detective, did you also interview the witness?

"A. Yes, I did.

"Q. What information did she give you?

"A. Mrs. Keyes was there and both me and Haldman were there at the interview.

"She gave a description of two men she chased out of the parking lot.

"Q. Did the description that she gave fit anybody that is in this courtroom?

"A. Yes, one did.

"Q. Who is that?

"A. Subject number one fits the defendant.

"Q. Based upon your investigation, did you arrest anyone in the courtroom as a result?

"A. Yes.

"Q. Who was that?

"A. [Appellant]."

After appellant's counsel had cross-examined the police officer, the court conducted the following examination of the witness:

"THE COURT: Is there anything else?

"[THE ASSISTANT DISTRICT ATTORNEY]: No, Your Honor.

"THE COURT: Excuse me. There is something missing here, it seems to me.

"Detective, during some part of your investigation you came and you arrested this man on a certain date, is that correct?

"THE WITNESS: Yes.

"THE COURT: As a result of certain information?

"THE WITNESS: Yes.

"THE COURT: You said Mrs. Keyes identified the person.

"Did she have anything to do with the fact of your arrest of this man?

"[APPELLANT'S COUNSEL]: I object, Your Honor.

"THE COURT: The objection is overruled. You may answer.

"THE WITNESS: Basically.

"THE COURT: In what way?

"[APPELLANT'S COUNSEL]: Your Honor, may we approach the bench?

"THE COURT: What was Mrs. Keyes' part in your arresting the defendant?

"[APPELLANT'S COUNSEL]: Objection, Your Honor.

"ThE COURT: The objection is overruled. You may answer.

"THE WITNESS: Mrs. Keyes was involved in the fact that she had identified a photograph of the defendant.

"[APPELLANT'S COUNSEL]: Your Honor, I will move for a mistrial.

"THE COURT: The motion is denied. Your answer was what?

"THE WITNESS: She identified a photograph of the defendant, Your Honor.

"THE COURT: This was exhibited to her by whom?

"THE WITNESS: It was made up by me and exhibited by Detective Hildesheim to her.

"THE COURT: Just how was the photograph exhibited?

"THE WITNESS: She was shown approximately thirty-eight hundred pictures in the beginning, and then through my information and investigation it led to [appellant], and a photograph of him was obtained and it was put in with five other photographs basically fitting his description.

"It was showed to Mrs. Keyes, and she immediately picked out the defendant as one of the men she had seen that night."

The examination of the witness by the court raises two separate grounds which should compel this Court to reverse appellant's conviction: first, the officer's testimony concerning the photographic array allowed the jury reasonably to infer that appellant had engaged in prior criminal activity and second, the court overstepped its authority in conducting the examination of the witness.

In *Commonwealth v. Turner*, 454 Pa. 439, 442, 311 A.2d 899, 900 (1973), the Supreme Court summarized the settled principles of law concerning the introduction of evidence of prior crimes committed by an accused: "In Pennsylvania, the law is clear that if a testimonial reference to a photograph indicates to the jury the accused has been involved in prior criminal activity, reversible error is committed. This rule is based on the

principle that evidence of distinct crimes may not be introduced against a defendant who is being tried for another crime, except under certain limited circumstances, not relevant here. See *Commonwealth v. Groce*, 452 Pa. 15, 303 A.2d 917 (1973); *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972)." See also, *Commonwealth v. Bobko*, 453 Pa. 475, 309 A.2d 576 (1973); *Commonwealth v. Clark*, 453 Pa. 449, 309 A.2d 589 (1973); *Commonwealth v. DeMarco*, 225 Pa.Super. 130, 310 A.2d 341 (1973); *Commonwealth v. Harding*, 225 Pa.Super. 84, 310 A.2d 326 (1973).

The problem of reference to prior crimes frequently arises when the police testify concerning pre-arrest photographic identification. See *Commonwealth v. Turner*, supra; *Commonwealth v. Allen*, supra; *Commonwealth v. Harding*, supra. Obviously, if the officer testifies that he exhibited "mug" shots, photographs from the "rogues gallery", or photographs from police "robbery" files, the jury naturally concludes that the accused had committed prior criminal acts. The issue becomes more complex if the reference to photographs *may* raise the inference that a defendant has a prior record. *Commonwealth v. Allen*, supra, however, stated that "[w]e hold that after the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference; so too, where it appears on the face of the record that there is an explanation of the police possession of the photograph unrelated to any inference of prior criminal activity." 448 Pa. at 181, 292 A.2d at 375.

Applying the test articulated in *Allen*, we believe that the jury could reach but one conclusion: the photo-

graph selected by Mrs. Keyes was drawn from a police photograph file. The sheer number of photographs—over 3,800—leads only to that conclusion. The police possess such an extensive file for only one conceivable purpose; thus, it would have been reasonable for the jury to conclude that appellant had committed prior crimes. Furthermore, the record on its face contains no explanation of possession of the photograph unrelated to prior criminal activity. Cf. *Commonwealth v. Shantz*, 236 Pa.Super. 46, 344 A.2d 717 (1975). It was undoubtedly for this reason that the prosecuting attorney did not examine the arresting officer on that subject, and chose instead to rest on the witness's in-court identification. The evidence elicited at trial by the court below bolstered the Commonwealth's case, but inadmissable evidence was introduced as a result.

Further, appellant contends that the lower court erred in examining the arresting officer on the subject of the photographs.

█ Initially, we agree with the general rule that "[a] judge in a jury trial has a right to interrogate witnesses. It sometimes becomes his duty to do so, even to the point of recalling a witness to supply an omission of proof on a material point." *Commonwealth v. Myma*, 278 Pa. 505, 507, 123 A. 486, 487 (1924). See also, *Commonwealth v. Miller*, 442 Pa. 95, 275 A.2d 328 (1971); *Commonwealth v. Brown*, 438 Pa. 52, 265 A.2d 101 (1970); *Commonwealth v. Gockley*, 411 Pa. 437, 192 A.2d 693 (1963); *Commonwealth v. Carluccetti*, 369 Pa. 190, 85 A.2d 391 (1952). A trial court must, however, be aware of the following caveat: " . . . [A] judge may so conduct an examination as to make it an abuse of discretion, requiring a new trial.

"Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires. It is better to permit counsel to bring out the evidence and

clear up disputed points on cross-examination unaided by the court; . . .. The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved. . . . To depart from the clear line of duty through questions, expressions, or conduct, contravenes the orderly administration of justice. It has a tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence." *Commonwealth v. Myma*, 278 Pa. at 508, 123 A. at 487.

A discussion of appellant's first contention makes clear that the trial court aggressively pursued the issue of the witness' photographic identification of appellant. The contested examination by the court did not supply "an omission of proof on a material point"; it was protracted; and it was a clear substitution of the trial court's judgment of how the case should have been tried. Thus, the examination went well beyond the court's limited role and placed the court in the role of an advocate.

Therefore, we reverse and remand for a new trial.

PRICE, J., files a dissenting opinion in which WATKINS, President Judge, and VAN der VOORT, J., join.

PRICE, Judge (dissenting).

I must dissent from the majority opinion granting the appellant a new trial. I find no merit to appellant's allegations of error, and would affirm the judgment of sentence.

The facts as found in the record reveal the following: Rochelle Galman returned to her apartment at approximately 10:15 p. m., on March 26, 1974, and interrupted a burglary in progress. Miss Galman observed two men leaving the apartment but could not make a positive identification. However, a neighbor, Mrs. Patricia

Keyes, also observed the two men, and was able to give a clear description of one of the burglars.

Mrs. Keyes was an exceptional witness and her testimony was clear, concise, and very convincing. She stated that the men were approximately ten feet from her and that she observed them for two or two and one-half minutes. Mrs. Keyes testified that the men came around the side of the building and walked past her. That area of the apartment complex is extremely well lighted by several floodlights, and the witness had an excellent opportunity to observe appellant, both full face and profile. Mrs. Keyes indicated that she felt it better to give one completely accurate description rather than two sketchy ones, so she concentrated on only one of the two men (appellant) and glanced but briefly at the other man.

She told the police the man was five feet eleven inches tall, weighed two hundred pounds, and had dark hair. He was wearing a navy blue, nylon windbreaker, black pants, black shoes, and a checkered shirt. In addition, appellant was carrying a flashlight, a pair of pliers, and a screwdriver. She stated that the two men got into a large, dark blue car with a black vinyl roof. She noted that the car had permanent Pennsylvania license plates but could not discern the license number because the car was in a darkened area and the occupants did not turn on their car lights. Mrs. Keyes chased the car on foot in an effort to ascertain the license number, but to no avail.

Appellant took the stand himself and denied any involvement in the crime. He also called, as alibi witnesses, his mother and father. His mother stated that he had been with her the entire evening of March 24, 1974. Both appellant and his mother insisted they were certain of the date because the next day, March 27, 1974, appellant's father retired. The jury, however, chose to disbelieve this testimony and credited instead that of the Commonwealth's witnesses.

Appellant first alleges that his arrest was not supported by adequate probable cause and was, therefore, illegal. He then argues that the evidence obtained from the arrest, *i. e.*, appellant's photograph and the subsequent identification, should have been suppressed. The alleged illegal arrest appellant is contesting was not made in connection with the case at bar, but was made instead for an unrelated burglary which occurred approximately six weeks later. When I examine the probable cause supporting the arrest warrant, I find it to be adequate.

The victim of the second burglary gave police a description of the two men who committed the crime as well as the license number of the get away car. A check of the license number revealed the car was leased to Pasquale Navarra. Warrants were issued for Navarra and another male. Twenty-five minutes after the burglary, the police had established a surveillance of Navarra's apartment and the get away car which was parked outside. Navarra and appellant, driving a different car, returned to the apartment at 1:00 p. m. At 2:00 p. m., both men left the apartment and entered the second car. At this time they were arrested.

When determining if probable cause does exist, we must bear in mind:

" 'that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, (citation omitted) ; that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, (citation omitted) ; that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, (citation omitted) ; and that their determination of probable cause should be paid great deference by reviewing courts, (citation omitted).'

*Spinella v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)." *Commonwealth v. Williams*, 236 Pa.Super. 184, 188–89, 345 A.2d 267, 269 (1975).

Applying the above rule, I must conclude that there was adequate probable cause to arrest appellant.

Appellant next contends that the actual photographic identification was unduly suggestive. The photo identification occurred as follows: Shortly after the burglary, Patricia Keyes looked through approximately 3800 photographs, but was unable to recognize anyone. Appellant's picture *was not* among these photographs. After appellant's arrest for the unrelated burglary, Mrs. Keyes was shown six more pictures, including appellant's. At this time she made the identification.

Appellant apparently bases his claim of undue suggestiveness on the fact that the five other pictures shown Mrs. Keyes had been taken from the 3800 previously shown her. Although Mrs. Keyes did admit that she recognized several of the five pictures, she did not recognize all five because she had previously seen so many. There was nothing to suggest prejudice or undue suggestiveness. All six pictures were of men with similar characteristics and appearance. The police officer who exhibited the photographs to Mrs. Keyes made absolutely no attempt to influence her identification. Finally, the identification was clear and positive. I am not prepared to hold that this identification was so unnecessarily suggestive as to lead to mistaken identity and a denial of appellant's right to due process of the law. *See Commonwealth v. Smith*, 454 Pa. 515, 314 A.2d 224 (1973).

Appellant argues that reversible error was committed when a police detective testified that the eyewitness, Patricia Keyes, identified appellant initially from a photograph. The law applicable to reference to photographs during trial was set forth in *Commonwealth v.*

*Allen*, 448 Pa. 177, 292 A.2d 373 (1972). Our Supreme Court there held:

> "The suggestion that any reference to a defendant's photograph is so prejudicial that an inflexible rule of reversal must apply is explicitly rejected. We hold that after the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference; so too, where it appears on the face of the record that there is an explanation of the police possession of the photograph unrelated to any inference of prior criminal activity." 448 Pa. at 181, 292 A.2d at 375.

Here, appellant argues that the mention of the 3800 photographs and the circumstances of the actual identification raise the inference of prior criminal activity. I do not agree.

Appellant cites numerous cases wherein our courts have concluded that, for one reason or another, the mention of photographs was fatal error. However, these cases are not controlling. The complained of colloquy is as follows:

> THE COURT: What was Mrs. Keyes' part in your arresting the defendant?
>
> MR. KESTENBAUM: Objection, Your Honor.
>
> THE COURT: The objection is overruled. You may answer.
>
> THE WITNESS: Mrs. Keyes was involved in the fact that she had identified a photograph of the defendant.
>
> MR. KESTENBAUM: Your Honor, I will move for a mistrial.

482

THE COURT: The motion is denied. Your answer was what?

THE WITNESS: She identified a photograph of the defendant, Your Honor.

THE COURT: This was exhibited to her by whom?

THE WITNESS: It was made up by me and exhibited by Detective Hildesheim to her.

THE COURT: Just how was the photograph exhibited?

THE WITNESS: She was shown approximately thirty-eight hundred pictures in the beginning, and then through my information and investigation it led to Mr. Elmore, and a photograph of him was obtained and it was put in with five other photographs basically fitting his description.

It was shown to Mrs. Keyes, and she immediately picked out the defendant as one of the men she had seen that night.

THE COURT: Thank you.

MR. KESTENBAUM: I just have one question.

THE COURT: Proceed.

BY MR. KESTENBAUM:

Q. You said she was shown approximately thirty-eight hundred photographs prior to the night she identified Mr. Elmore?

A. She was shown approximately thirty-eight hundred and seventy-six, to be exact, the night of the burglary. She was shown them at our headquarters.

Q. And she couldn't identify anyone?

A. No, she did not pick out anyone in that lineup at that time. (NT 61–63)

I agree that the jury may have inferred that the thirty-eight hundred pictures came from police files. However, the above testimony clearly indicates that the wit-

ness *did not* select appellant's picture from those thirty-eight hundred initially shown her. This fact belies any inference of prior criminal activity. As stated previously, reference to a defendant's picture does not always mandate reversal. *Commonwealth v. Allen, supra.*

Lastly, appellant contends that the trial judge committed reversible error when he questioned the detective about the pictures shown Mrs. Keyes. However, I find no abuse of the discretion afforded the trial judge in questioning witnesses.

The trial judge always has the right, and sometimes has the duty to interrogate witnesses, so long as the questioning from the bench neither shows bias or feeling nor is unduly protracted. *Commonwealth v. Miller,* 442 Pa. 95, 275 A.2d 328 (1971). Here, the questioning was not unduly protracted, covered only one point, and showed no bias on the part of the trial judge. While the lower court must be extremely careful that his questioning does not unduly influence the jury, *Commonwealth v. Lanza,* 228 Pa.Super. 300, 323 A.2d 178 (1974), I see no untoward influence exerted on the jury in the present case.

I would affirm the judgment of sentence.

WATKINS, President Judge, and VAN der VOORT, J., join this opinion.