409 A.2d 876

**COMMONWEALTH of Pennsylvania**

v.

**Michael TOOMBS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1979.

Filed Sept. 7, 1979.

Albert M. Scibello, Assistant Public Defender, Media, for appellant.

David E. Fritchey, Assistant District Attorney, Chief, Law and Appeals Unit, Media, for Commonwealth, appellee.

Before PRICE, SPAETH and LIPEZ, JJ.

SPAETH, Judge:

Appellant was convicted by a jury of robbery, burglary, theft by unlawful taking, simple assault, and conspiracy. After his post-verdict motions were denied, he was sentenced to two to four years in prison.

Appellant first argues that the trial judge's extensive examination of defense witnesses was an abuse of discretion because in questioning the witnesses the judge assumed the role of the prosecutor and prejudiced appellant's case in the eyes of the jury.

The classic statement of the rule limiting a trial judge's participation in the examination of witnesses appears in *Commonwealth v. Myma*, 278 Pa. 505, 508, 123 A. 486, 487 (1924):

> Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires. It is

better to permit counsel to bring out the evidence and clear up disputed points on cross-examination unaided by the court . . . . The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved. The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance and from whom litigants expect absolute impartiality. . . . [He] should not, during the trial, indicate an opinion, on the merits, a doubt as to the witnesses' credibility, or do anything to indicate a leaning to one side or the other, without explaining to the jury that all these matters are for them.

*Accord, Commonwealth v. Seabrook,* 475 Pa. 38, 379 A.2d 564 (1977); *Commonwealth v. Miller,* 442 Pa. 95, 275 A.2d 328 (1971); *Commonwealth v. Elmore,* 241 Pa.Super. 470, 362 A.2d 348 (1976); *Commonwealth v. Lanza,* 228 Pa.Super. 300, 323 A.2d 178 (1974); ABA Standards Relating to the Function of the Trial Judge, § 6.4, p. 19 (1972).

One of appellant's witnesses testified that after the robbery, on the same day it occurred, he spoke with the prosecuting witness. According to him, the prosecuting witness neither mentioned the robbery nor appeared nervous or excited but instead appeared intoxicated. Direct examination by appellant's counsel was brief, and the witness's testimony clear.

In presenting this witness, counsel apparently intended to suggest that no robbery had taken place. This suggestion would be consistent with counsel's overall theory that the prosecuting witness accused appellant of the crime at the instigation of the owner of the bar that was allegedly robbed, because the owner, who employed the prosecuting witness, had a grudge against appellant. Given that the prosecuting witness allegedly saw the robber, and yet could not identify appellant, whom he had known for over a year as a frequent patron of the bar, until police showed him a picture of appellant at the suggestion of the owner of the bar, evidence tending to show that a robbery may not have occurred was certainly relevant. Moreover, because the

prosecution's case rested on the testimony of the prosecuting witness, any testimony tending to undermine that testimony was vital to appellant's case.

Before the assistant district attorney could begin his cross-examination of appellant's witness, the trial judge interrupted:

MR. BULLEN: Thank you.

THE COURT: Ask him when he started to discuss this matter, this testimony.

MR. BULLEN: Your Honor,—

THE COURT: I'm going to find out.

MR. BULLEN: May we approach the bench?

THE COURT: I'm going to find out.

MR. BULLEN: May we approach the bench?

THE COURT: Just a moment, I am going to ask him more questions. I am going to ask him some questions.

MR. BULLEN: I am asking for a sidebar.

THE COURT: All right.

N.T. 145–146.

At the sidebar conference appellant's counsel objected that the trial judge had given the jury the impression that he sided with the prosecution, and moved for a mistrial. The motion was denied.

■ The effect of the trial judge's remarks was undoubtedly prejudicial. By directing counsel to ask the witness "when he started to discuss this testimony", the judge implied not only that he did not believe the testimony, but that in some way, perhaps known to appellant's counsel, the testimony was rehearsed. The judge's choice of the phrase "I'm going to find out" was particularly unfortunate in its effects. It implied that appellant's counsel was attempting to prevent the jury from learning the truth, and it seemed to express the judge's determination to defeat that attempt. These unfortunate effects were enhanced by the judge's persistence in twice rebuffing counsel's attempts to approach the bench, the first time with a repetition of the judge's expressed determination "to find out," the second

time with the admonition, "Just a moment, I am going to ask him more questions." Counsel was thus put in the position of one who was interfering with the judge, whereas in fact it was not counsel but the judge who had exceeded the limits imposed upon him. By interjecting himself, in the manner he did, and before cross-examination, the judge "indicate[d] a leaning to one side," and "enter[ed] into the trial . . . as an advocate . . . ." *Commonwealth v. Myma, supra.*

Significantly, this was not an isolated incident. The trial judge on other occasions involved himself in the examination of a defense witness, in a way that did not necessarily clarify the facts, but might well have swayed the jury in the prosecution's favor.

During direct examination of appellant's alibi witness, the trial judge interrupted counsel in the middle of a question and interjected humor not appropriate to the occasion:

Q. So you sat around and drank that night?

A. Um-hum.

Q. What did you have to drink?

A. Thunderbird.

Q. How many—

THE COURT: Thunderbird. I thought that was a name of a car.

N.T. 81.

In the middle of the assistant district attorney's cross-examination of this same witness, the judge interrupted:

Q. Where were you going at 7:00 o'clock in the morning?

A. Taking my nephew to school. Going down, going to leave him from my house; going down to my sister's house, taking my nephew to school.

Q. Your nephew lives with you?

A. Unh-unh. He lives with my sister.

THE COURT: Who lives with you?

THE WITNESS: Hmm.

THE COURT: Who lives with you?

THE WITNESS: Just me and my girlfriend.

THE COURT: You and your girlfriend?

THE WITNESS: Um-hum.

THE COURT: What was he doing at your house at 2:30 in the morning if you were there with your girlfriend?

THE WITNESS: Well, I guess he wanted to come there.

N.T. 85.

The judge's last question in this exchange was plainly more in the nature of a challenge to the witness's testimony than it was a clarification of it; when this type of questioning is engaged in by a trial judge, the jury can be expected to infer that the judge does not believe the witness.

Later in the cross-examination of this same witness the judge again interrupted the assistant district attorney, this time on whether the witness was testifying about the night on which the crime occurred; [even though the witness had already testified that he was with appellant the night before he was arrested].

THE COURT: Did you expect him there, did you, that night?

THE WITNESS: No. I didn't expect him.

THE COURT: What date did you say this was?

THE WITNESS: I don't know what date it was.

THE COURT: What date did you say?

THE WITNESS: I don't know what date.

THE COURT: You don't even know what date it was?

THE WITNESS: I don't know what date it was.

THE COURT: He doesn't know what date this occurred, he says.

MR. BULLEN: Your Honor, he testified he recalled it was the day his friend got arrested.

N.T. 87.

On re-direct, the judge asked the witness still further questions on the issue of the date:

THE COURT: What time was this that you were outside of Es's?

THE WITNESS: I guess about twenty-five after 8:00, 8:30.

THE COURT: What date was that?

THE WITNESS: I don't know the date.

THE COURT: Well, it's very important. That's what we're trying to find out.

THE WITNESS: I don't even know the date. I couldn't tell you the date.

MR. BULLEN: Question on that point.

BY MR. BULLEN:

Q. Was it the day your friend got arrested that you were at Es's?

A. When I came from down Third and Lamokin, they told me. But it was the date that he got arrested.

Q. Is that how you remember this?

A. Um-hum.

MR. BULLEN: Thank you.

N.T. 97–98.

This questioning by the trial judge must have influenced the jury's opinion of the witness's credibility. Since appellant's defense was one of alibi, the judge's action prejudiced appellant's case.

■ Appellant's counsel formally objected only to the trial judge's intervention in the examination of appellant's witness who testified regarding having spoken to the prosecuting witness. Accordingly, claims arising from other interventions have been waived. Nevertheless, the other interventions shown on the record confirm the prejudicial impact of the intervention to which appellant's counsel did formally object.

Because this issue is dispositive, we need not reach the other arguments raised by appellant.

The judgment of sentence is reversed, and the case is remanded for a new trial.