J-S40021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LARRY WILLIAMS | |
| Appellant | No. 46 EDA 2014 |

Appeal from the Judgment of Sentence December 2, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007973-2012

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LARRY WILLIAMS | |
| Appellant | No. 2965 EDA 2014 |

Appeal from the Judgment of Sentence June 5, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007973-2012

BEFORE: BOWES, J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                    **FILED JULY 06, 2016**

Appellant, Larry Williams, appeals from the aggregate judgment of sentence of 17 to 34 years' incarceration, imposed after he was convicted, in two separate trials, of conspiracy to commit murder, conspiracy to commit

aggravated assault, and recklessly endangering another person (REAP).[1] After careful consideration, we affirm Appellant's convictions, affirm his December 2, 2013 judgment of sentence, but vacate Appellant's June 5, 2014 judgment of sentence and remand for re-sentencing.

The somewhat convoluted factual and procedural history of this case is as follows. Appellant was arrested and charged with, *inter alia*, the aforementioned offenses. The facts contained in the certified record from the first trial reveal that on December 2, 2011, the victim, Eric Brooks-Blanding, was shot in both knees. N.T., 9/24/13, at 51-52. Philadelphia Police Officer Matthew Crosson testified that he was called to the shooting scene, where the victim related that he was shot by a black male wearing a gray hoodie and camel jacket, and known as "Lo." *Id.* at 62-63. The victim stated that the shooter fled in a Mercury Milan. *Id.*

The victim additionally testified that he was shot three times, including twice in the knees, but denied that it was Appellant who shot him. *Id.* at 89. The victim denied being shot by Appellant, and averred that he was shot by "a dark skin[ned] boy. He looked like he was Jamaican or something." *Id.* at 91. The victim repeatedly denied giving any statements to the police identifying Appellant as the shooter. *Id.* at 100-116. Amid his denials, the victim stated, "I didn't accuse [Appellant]. I was forced to

_____

[1] 18 Pa.C.S.A. §§ 903 (to commit 2502 and 2702) and 2705, respectively.

accuse him." *Id.* at 124. The Commonwealth asked the victim "[w]hat happens to snitches?" and the victim responded, "[g]et stitches." *Id.* at 128.

Brittney Romano testified to being at a 7-11 store the morning of the shooting. Ms. Romano identified Appellant as also being present at the 7-11. *Id.* at 150. After leaving the 7-11, Ms. Romano saw Appellant on the street corner; she identified him in court as "Lo." *Id.* at 154. Ms. Romano related that Appellant "was cursing" and "talking about" Ms. Romano, which led her to call the victim. *Id.* at 154-156. Ms. Romano testified that when the victim appeared, he started yelling at Appellant, who then "ran down the block." *Id.* at 157. After Appellant fled, Ms. Romano and the victim began to argue when "a car pulled up and four boys hopped out and I heard gunshots." *Id.* at 158. Ms. Romano identified the car as a Mercury. *Id.* at 167.

Alisa Bull testified to being with Ms. Romano and the victim on the day of the shooting. She explained that she did not want to testify or come to court, and that her ex-boyfriend called her from jail and told her not to appear in court. N.T., 9/25/13, at 7-8. Nonetheless, Ms. Bull stated that she was with Ms. Romano and the victim when "two people got out of the car" and "started shooting at us." *Id.* at 14.

Philadelphia Police Officer Chris Casee testified to responding to the shooting scene and sending Ms. Romano and Ms. Bull to headquarters to be

interviewed. *Id.* at 64. Officer Casee then went to the hospital where he interviewed the victim, who was "fully cooperative." *Id.* at 85. Officer Casee testified that he showed the victim a photo array from which the victim identified Appellant as being "involved in the incident." *Id.* at 94. Officer Casee stated that the victim "actually circled the photo of [Appellant], wrote on the photo itself this is LO. Signed his name and wrote the date and time." *Id.* Officer Casee also testified that Ms. Romano "came in on her own and was willing to speak with me." *Id.* at 97.

Philadelphia Detective Edward Horger also testified to interviewing Ms. Romano and Ms. Bull on the day of the shooting and taking the women's statements. *Id.* at 122, 127. He stated that Ms. Romano was not hostile or uncooperative when she described the individual who approached her at the 7-11 as "half-black … skinny, kind of short … about 5'7"." *Id.* at 125.

On September 30, 2013, a jury convicted Appellant of REAP, with a mistrial declared on conspiracy and assault charges. On December 2, 2013, the trial court sentenced Appellant to 1 to 2 years' incarceration. Appellant filed a notice of appeal on December 30, 2013. In the meantime, Appellant was re-tried as a result of the mistrial.

The facts of record from the second trial reveal that Philadelphia Police Officer Crosson once again testified to reporting to the shooting scene on December 2, 2011. Officer Crosson testified that the victim gave him a

statement, telling him where the shooter "stayed," but that the shooter had fled in a black Mercury Milan. N.T., 2/26/14, at 47-48, 54-55. The victim told Officer Crosson that the shooter was known as "Lo." *Id.* at 51.

The victim testified again and stated he remembered "what happened, but I didn't give a statement." *Id.* at 58. He testified that he was dating Brittney Romano at the time of the shooting. *Id.* at 67. He denied telling police that "Lo" set up the shooting, and did not remember describing "Lo" as a "light skinned" black male with braids, approximately 5'9". *Id.* at 79. The victim testified that he "didn't see the people" who shot him, and was "telling the truth about everything." *Id.* at 97-98, 105. The victim also stated that being in court and testifying against Appellant would make him a snitch, but that he was not protecting Appellant. *Id.* at 99, 107.

Ms. Bull also testified at the second trial. She remembered the day of the shooting and speaking with the police afterward. N.T., 2/27/14, at 18. She testified that the victim was dating Ms. Romano at the time, and that she and Ms. Romano were in the 7-11 the morning of the shooting. *Id.* at 19-20. Ms. Bull did not see Appellant in the 7-11. *Id.* at 21-22. After Ms. Bull and Ms. Romano left the 7-11, the victim appeared and was yelling at a man from the 7-11 about a "fight in jail." *Id.* at 31. The victim then returned to where Ms. Bull and Ms. Romano were on the street when the shooting began. *Id.* at 34-36. Afterward, Ms. Bull spoke with the police. *Id.* at 38. She explained that she was testifying pursuant to a bench

warrant and did not "want to come to court." *Id.* at 41. She said she "didn't want to put the wrong person in jail" and "d[id]n't care about being called a snitch." *Id.* at 43, 46. Ms. Bull explained that "two guys got out [of a Mercury Milan] and I just seen guns and that's it and I ran." *Id.* at 67. Ms. Bull stated that she did not remember what she said to police because "it was two years ago." *Id.* at 72.

Philadelphia Police Detective Horger testified to arriving on the scene of the shooting and interviewing Ms. Bull, who was cooperative. *Id.* at 79. Ms. Bull told Detective Horger that the shooter was the passenger in the Mercury Milan, who was "black, light-skin, wearing a white T shirt and khakis and a snow hat that had strings." *Id.* at 85. Detective Horger testified that an hour before the second trial, Ms. Bull told him "she wasn't going to say anything, this happened a few years ago, she still had to live there, she didn't want to say anything." *Id.* at 87.

After testimony from Detective Casee regarding his unsuccessful attempts to contact Ms. Romano to appear to testify at the second trial, the trial court granted the Commonwealth's motion to declare Ms. Romano unavailable to testify at the second trial. *Id.* at 103. In lieu of Ms. Romano's testimony, an assistant district attorney, Ms. Tracey Gaydos, read Ms. Romano's testimony from the first trial, in which, *inter alia*, she identified Appellant as being at the 7-11 on the day of the shooting, and

- 6 -

then out on the street "cursing" and yelling with the victim just prior to the shooting. *Id.* at 108, 112-113.

Detective Casee testified to investigating the shooting and interviewing the victim at the hospital. *Id.* at 60. Detective Casee stated he "started developing possible suspects based on the information that [the victim] had given me." *Id.* at 60-01. Thereafter, Detective Casee showed the victim photos, from which the victim identified Appellant.[2] *Id.* at 61. Detective Casee interviewed Ms. Romano five days after the shooting, and she identified Appellant from a photo array as the individual who engaged in the argument outside the 7-11. *Id.* at 95.

On March 4, 2014, a jury convicted Appellant of conspiracy to commit murder and conspiracy to commit aggravated assault.[3] On June 5, 2014, the trial court sentenced Appellant to 17 to 34 years' incarceration for conspiracy to commit murder, and 10 to 20 years' incarceration for conspiracy to commit aggravated assault, with both sentences to run concurrent to each other and to Appellant's December 2, 2013 sentence of 1 to 2 years' incarceration for REAP. Appellant filed a post-sentence motion

---

[2] Detective Casee testified that the victim also identified another male, Lamar Osborne, known as "Marty," as being involved in the shooting, and who at the time of the second trial had a warrant out for his arrest but had not been taken into custody. *Id*. at 61-63.

[3] Appellant was acquitted of aggravated assault.

seeking an arrest of judgment, new trial, and reconsideration of sentence on June 12, 2014, as well as an amended post-sentence motion on August 28, 2014. The trial court denied all of Appellant's post-sentence motions on October 14, 2014. Appellant filed a second notice of appeal on October 15, 2014. On December 2, 2014, this Court granted Appellant's request to consolidate his appeals.[4]

On appeal, Appellant presents five issues for our review.

[1.]    Did the [t]rial [c]ourt abuse its discretion in denying [A]ppellant's pretrial motion to dismiss the charges under Pa.R.C.P. 600(A)(2), where more than three hundred sixty-five (365) days had elapsed between the filing of the complaint and the commencement of the first trial, and further abuse[d] its discretion in refusing to grant [A]ppellant's right to a prompt trial?

[2.]    Did the [t]rial [c]ourt abuse its discretion in denying [A]ppellant's post-sentence motions seeking an arrest of judgment on all charges where there was insufficient evidence to support the convictions in both trials, absent the consideration by the jury of impermissibly admitted out-of-court statements as substantive evidence, when the jury was not properly instructed as to the consideration of the statements where there was no proof declarants of the statements adopted the out-of-court statements[?]

_____

[4] Trial court did not direct compliance with Pennsylvania Rule of Appellate Procedure 1925. The docket states "Opinion Not Filed – Judge No Longer Sitting." Docket Entry, 4/7/15.

[3.]     Did the [trial] court commit reversible error entitling [A]ppellant to a new trial by usurping the function of the jury as to credibility of witnesses, when it prejudicially asked the victim whether he was "capable of telling the truth about anything?"

[4.]     Did the [trial] court impose an illegal sentence requiring this [C]ourt to remand for a new sentencing hearing, when there was insufficient evidence that the victim sustained serious bodily injury?

[5.]     Did the [trial] court abuse its discretion by imposing a sentence that was manifestly excessive, unreasonable under the circumstances and otherwise violated a particular provision of the Sentencing Code or was contrary to the fundamental norms underlying the sentencing process; and [] did not the lower court abused [sic] its discretion by denying [A]ppellant's post-sentence motion raising this claim?

Appellant's Brief at 3-4.

In his first issue, Appellant argues that he was brought to trial in violation of his prompt trial rights as prescribed by Pennsylvania Rule of Criminal Procedure 600(A).[5]  In addressing these issues, we adhere to the

_____

[5] Effective July 1, 2013, the former Rule 600 was rescinded and a new version was adopted which "clarified the provisions of the rule in view of the long line of cases that have construed the rule."  Pa.R.Crim.P. 600 cmt.  The new rule consolidates the former distinction between excludable and excusable time in the calculation of an adjusted run date.  *Id.* at 600(C)(1).  As the trial court heard and considered Appellant's Rule 600 claim on September 24, 2013, the claim is raised under the current Rule 600, although our case law referencing the former Rule 600 is applicable to our analysis of this case.

following standard and scope of review. "When reviewing a trial court's decision in a Rule 600 case, an appellate court will reverse only if the trial court abused its discretion." ***Commonwealth v. Bradford***, 46 A.3d 693, 700 (Pa. 2012).

> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after [a] hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review … is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> …
>
> **So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime**. In considering these matters …, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

***Commonwealth v. Peterson***, 19 A.3d 1131, 1134 (Pa. Super. 2011) (*en banc*) (citations omitted) (emphasis added), *affirmed*, 44 A.3d 655 (Pa. 2012).

- 10 -

Instantly, Appellant asserts that he was not tried until 624 days had passed from the January 13, 2012 filing of the criminal complaint against him, until the commencement of his first trial on September 25, 2013.[6] Appellant's Brief at 12-13. Appellant concedes that the time lapse was due to "judicial delay," and bases his argument on the supposition that "there is absolutely no justification for [A]ppellant not being tried until 624 days after the filing of the complaint on the primary basis of 'judicial delay.' This Court must not condone the [Commonwealth] 'sitting on its hands' and taking no active role in attempting to secure another judge who could have timely tried [A]ppellant's case under Rule 600." *Id.* at 15-16.

In response, the Commonwealth counters that it was "not required to prove its diligence during a delay caused by the trial court's crowded docket." Commonwealth's Brief at 11. It further cites our Supreme Court's decisions in **Commonwealth v. Hawk**, 597 A.2d 1141 (Pa. 1991), and **Commonwealth v. Smith**, 569 A.2d 337, 340 (Pa. 1990), as support for its contention that "the circumstances that could place an obligation on the Commonwealth to seek another judge are limited, and do not include delays caused in the normal course by busy court dockets." *Id.* at 18-19. Upon review, we agree with the Commonwealth.

---

[6] Although the difference is negligible, we calculate 621 days from January 13, 2012 to September 25, 2013.

- 11 -

Appellant argued this issue before the trial court at the September 24, 2013 Rule 600 hearing. Appellant's counsel asserted that "when there's a very long judicial delay, the Commonwealth in my opinion should have a bit of a duty, a big duty I should say, to work with criminal listings, court administration, whatever you want to call it, to see if there's an earlier date within the adjusted run date to bring the defendant to trial so that he is brought to trial within the adjusted run date." N.T., 9/24/13, at 6-7. The trial court responded to this argument and referenced its busy caseload as follows.

> Well, let me just add that if the Commonwealth could do that then they could do more than judges. They won't listen to me. They don't want to hear from me in criminal listings. We can call them. They don't even want to talk about it. There's nobody who will even listen to that.

*Id.* at 7.

Appellant's counsel nevertheless continued, "the biggest chunk of time [of] 282 days [is] when Your Honor continued the case from December 12th to September 20th because of Your Honor's calendar which I'm sure was very crowded and you had many trials." *Id.* at 8. Appellant's counsel and the trial court thereafter engaged in the following exchange.

> THE COURT: Because [Philadelphia C]ourt administration probably decided where I was going to be and what I was going to do. They don't even tell me in advance when I'm not going to be here. I don't find out until I come into the courtroom and the crier tells me you're not here that week. Keep going.

- 12 -

COUNSEL: I'm just pointing out Your Honor that judicial delay is 30 days maybe because you had another jury in progress or the judge had a vacation. Thirty days I can live with, a 30-day continuance. But when you get a 282 day gap this is one I feel something has to be done by either the court and with the assistance of the DA or the DA on its own, something should be done.

THE COURT: Or you should take this up with the [S]uperior [C]ourt. This is their rule. They run this court.

COUNSEL: If I don't win this case, Your Honor, that's going to be a big issue.

THE COURT: I think that would be a good issue for you to take up with them.

COUNSEL: That would be my argument. I think maybe it would be expeditious to do one argument at a time.

THE COURT: Your motion is denied.

*Id.* at 8-9.

Preliminary, we note that we do not "run [the trial] court." In addition, we recognize that the Superior Court is an error-correcting court. *Commonwealth v. Flowers*, 113 A.3d 1246, 1252 (Pa. Super. 2015). We further acknowledge that because the Commonwealth cannot control the calendar of a trial court, delay occasioned by the court's unavailability – which is not disputed in this case – is usually excusable. *Commonwealth v. Riley*, 19 A.3d 1146, 1149 (Pa. Super. 2011) (citation omitted). Similarly, delays caused by administrative decisions of the court, decisions over which the Commonwealth has no control, are generally excused. *Id.*

- 13 -

Here, the record indicates that the majority of the delay occasioned in this case – the 282 days identified by Appellant[7] – was attributable to the heavy caseload of the Criminal Division of the Philadelphia Court of Common Pleas. We empathize with Appellant's argument, however, under existing case law, we discern no abuse of discretion by the trial court in denying Appellant's Rule 600 motion where neither the Commonwealth nor the trial court was obligated to, or could control the court calendar.

In his next issue, Appellant assails the sufficiency of the evidence. "A claim impugning the sufficiency of the evidence presents us with a question of law." *Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted), *appeal denied*, 95 A.3d 275 (Pa. 2014). Our standard and scope of review is as follows.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be

_____

[7] To clarify, when these 282 days are subtracted from the 624 days total asserted by Appellant, he was tried within 342 days, and thus within the confines of Pennsylvania Rule of Criminal Procedure 600.

- 14 -

drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Fabian***, 60 A.3d 146, 150-151 (Pa. Super. 2013) (citation omitted), *appeal denied*, 69 A.3d 600 (Pa. 2013).

After review of Appellant's argument within his brief, we decline to reach the merits of Appellant's sufficiency claim because Appellant's argument is vague and underdeveloped. Appellant generally asserts that the evidence was insufficient to sustain his convictions "absent the improper admission of and consideration by the jury of out-of-court statements." Appellant's Brief at 16-20. Nowhere in his argument does Appellant mention the three offenses of which he was convicted, nor the elements of these three offenses. Appellant simply and broadly asserts, without naming the witnesses or citing their testimony, that the trial court erred by permitting the Commonwealth "to introduce and confront the victim and other two witnesses with their alleged prior out-of-court statements for consideration by both juries as substantive evidence." ***Id***. at 18. Appellant has failed to specify or detail how, in either of his two trials, which out-of-court statements, by whom, and where in the record, the errors occurred. Although we could make inferences from Appellant's general argument and

- 15 -

our reading of the record, to take such liberty would be improper. ***See***

***Commonwealth v. Reeves***, 907 A.2d 1, 2 (Pa. Super. 2006) (stating

"[w]hen a court has to guess what issues an appellant is appealing, that is

not enough for meaningful review[]"), *appeal denied*, 919 A.2d 956 (Pa.

2007). Moreover, with regard to claims pertaining to the sufficiency of the

Commonwealth's evidence, we have stated as follows.

> "The failure to develop an adequate argument in an appellate brief may [ ] result in waiver of the claim" under Pa.R.A.P. 2119. ***Commonwealth v. Gonzalez***, 415 Pa.Super. 65, 608 A.2d 528, 531 (1992). In this case, [appellant] has presented no argument explaining how he was affected …, and includes no citation to the record to support his argument. We shall not develop an argument for [appellant], nor shall we scour the record to find evidence to support an argument; consequently, we deem this issue waived.

***Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en

banc*), *appeal denied*, 982 A.2d 509 (Pa. 2009).

Instantly, Appellant's sufficiency argument is underdeveloped and fails

to comply with Pennsylvania Rule of Appellate Procedure 2119(a)-(d), such

that we would need to "scour the record" to advance it. ***Id***. We will not

further develop Appellant's argument for him. Accordingly, his sufficiency

issue is waived.

In his third issue, Appellant asserts that the trial court erred in failing

to grant a mistrial in his second trial where the trial court asked the victim

whether he was "capable of telling the truth about anything?" Appellant's

Brief at 21, *citing* N.T., 2/26/14, at 98. Appellant asserts that the trial court erred by "injecting its own opinion" and thus "severely prejudiced [A]ppellant," entitling him to a new trial. *Id*. at 22.

Our standard of review is as follows.

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

*Commonwealth v. Tejeda*, 834 A.2d 619, 623 (Pa. Super. 2003) (citations and footnote omitted).

The exchange referenced by Appellant occurred during his second trial. The Commonwealth was questioning the victim as follows.

| | |
|---|---|
| COMMONWEALTH: | And then you heard the shot. |
| VICTIM: | … I heard the shot. I didn't see them, I didn't hear no cars or nothing. |
| COMMONWEALTH: | When you saw [Appellant] and Marty, they were coming from the one-way sign, is that what you are saying? |
| DEFENSE COUNSEL: | Objection. |
| THE COURT: | What is your objection? |

DEFENSE COUNSEL: When you saw [Appellant] and Marty. He never said that he saw [Appellant].

VICTIM: I said the people already was there running down the street while I was running on the porch.

THE COURT: Is he changing it now, what is he saying now?

VICTIM: I didn't change it.

COMMONWEALTH: [Victim], where was Marty and where was [Appellant] when you were shot?

VICTIM: They w[ere]n't there.

COMMONWEALTH: They weren't there now?

VICTIM: No.

COMMONWEALTH: They weren't running from where the one way, where the one-way sign is?

VICTIM: No, that's where the people that were shooting at me started running.

COMMONWEALTH: But that was not Marty and [Appellant]?

VICTIM: No.

COMMONWEALTH: So what you just said five minutes ago, two minutes ago, maybe even less, is different?

| | |
|---|---|
| VICTIM: | No, I'm just saying [that] because that's what you want me to say. |
| COMMONWEALTH: | I want you to say the truth. |
| VICTIM: | I didn't see the people that really shot me, I'm just telling you where I think it's coming from. You asked me was Marty and them standing right here, and I said no the people that shot me was coming[.] |
| COMMONWEALTH: | Well, I asked you if [Appellant] and Marty— |
| VICTIM: | Were standing right here— |
| COMMONWEALTH: | -- were standing right here and you said, no, they were coming from where the one way is … That's what you said two and a half minutes ago. |
| VICTIM: | I meant they. I believe I did say, tell – I mean the people that were shooting at me. |
| THE COURT: | **Are you capable of telling the truth about anything?** |
| DEFENSE COUNSEL: | **Objection, Your Honor.** |
| THE COURT: | **Are you?** |
| VICTIM: | **I'm telling the truth about everything.** |
| THE COURT: | **Continue.** |
| COMMONWEALTH: | Thank you, Your Honor. |

N.T., 2/26/14, at 96-98 (emphasis added). Thereafter, Appellant repeated his objection and requested a mistrial. The trial court noted that it "understood" the objection and denied the request. *Id*. at 118.

In *Commonwealth v. Ables*, where an appellant contended that a new trial should be granted because the trial judge acted improperly by questioning witnesses and acted as a prosecutorial advocate, we examined this issue as follows.

> A new trial is required only when the trial court's questioning is prejudicial, that is when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial. It is always the right and sometimes the duty of the trial judge to interrogate witnesses. However, questioning from the bench should not show bias or feeling or be unduly protracted. ….
>
> The trial judge stated that his questioning was to clarify [the witness's] testimony. While such questioning is better left to the trial attorneys, we find that the questioning merely clarified [the witness's] testimony. We see no indication in the record that the trial judge's questioning of witnesses deprived appellant of a fair and impartial trial, and conclude the lower court's actions were proper.

*Commonwealth v. Ables*, 590 A.2d 334, 341 (Pa. Super. 1991) (citations omitted), *appeal denied,* 597 A.2d 1150 (Pa. 1991).

Additionally, in *Commonwealth v. Purcell*, we quoted our Supreme Court and explained as follows.

Concerning the questioning of a witness by the trial court, the Supreme Court has recently commented:

'Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires. It is better to permit counsel to bring out the evidence and clear up disputed points on cross-examination unaided by the court; but where an important fact is indefinite or a disputed point needs to be clarified, the court may see that it is done by taking part in the examination.... Judges should refrain from extended examination of witnesses; they should not, during the trial, indicate an opinion on the merits, a doubt as to the witnesses' credibility, or do anything to indicate a leaning to one side or the other, without explaining to the jury that all these matters are for them.'

[*Commonwealth v. Myma*, 123 A. 486, 487 (Pa. 1924).]

**That does not mean that a trial judge must sit idly by, a mere evidential technician, silenced in the face of the impossible, absurd, ambiguous or the frivolous**. **Nor should he leave unasked or unanswered questions that center the matter or amplify relevant testimony on the question or issue**. It is a false and dangerous neutrality that would allow loss of liberty or property when another question at further inquiry would gain the fact, expose a false or improper premise, interest or bias of a witness, or correct insinuation unfounded in the record. It is not partisan to maintain the wheel, steering evenly, between competing and often aggressive counsel, anxious to set the course. Nor should a judge yield the gavel to zealous partisans or allow counsel to impose their contentions by contumelious conduct. When others than the trial judge control the proceedings, one side has lost their day in court.

- 21 -

*Commonwealth v. Roldan*, 572 A.2d 1214, 1215 (Pa. 1990), *quoting* [] *Myma*, [*supra*]. "A new trial is required ... only when the trial court's questioning is prejudicial, 'that is when it is of such nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.'" *Commonwealth v. Troop*, [571 A.2d 1084, 1086 (Pa. Super. 1990)], *quoting* *Commonwealth v. Hammer*, 494 A.2d 1054, 1060 (Pa. 1985). []

Instantly, we view the court's question to [the witness] as an attempt to clarify an earlier answer which the witness had given in response to defense counsel's questioning. Although the court's question may have been inartfully phrased, the court responded immediately to defense counsel's concerns and cautioned the jury that there was no intent on the court's part to imply skepticism of [the witness's] testimony. Moreover, at the start of trial, the court had thoroughly informed the jurors that it was their function to determine the facts and weigh the credibility of witnesses. The court had also told the jury that:

> You are not bound by any opinion you might think counsel or I have expressed concerning guilt or innocence, credibility of witnesses, weight of evidence, facts proven by the evidence, or inferences to be drawn from those facts.
>
> ....
>
> I may question some of the witnesses myself. The questions will not reflect any opinion on my part about the evidence or about this case. My only purpose will be to inquire about matters which I feel that counsel may not have fully explored.

When viewed with the specific cautionary instruction given by the trial court and the general explanation of the jury's function, we are satisfied that the

> court's questioning of [the witness] was not prejudicial to the defense.

***Commonwealth v. Purcell***, 589 A.2d 217, 223-224 (Pa. Super. 1991) (parallel citations and footnote omitted), *appeal denied*, 604 A.2d 248 (Pa. 1992).

Mindful of the foregoing authority, and upon review of the record *in toto*, we discern no abuse of discretion by the trial court. We initially note that we cannot determine from the transcript the tone, inflection or demeanor of the trial court when it asked the victim whether he was capable of telling the truth. Further, the question was not rhetorical, as the victim answered, "I'm telling the truth about everything." The trial court then responded "Continue." This exchange may be perceived as the trial court's proper exercise of control over the proceedings, as well as its effort to clarify the victim's conflicting and confusing testimony. ***Roldan, supra***. In addition, we agree with the Commonwealth that the jury is presumed to follow the trial court's instructions to "reach a fair verdict based solely on the evidence." Commonwealth's Brief at 31; ***see also Commonwealth v. Travers***, 768 A.2d 845 (Pa. 2001) (noting the law presumes that the jury will follow the instructions of the court). Here, the trial court instructed the jury members to "each keep an open mind throughout the trial," and that they "were the sole judges of the credibility and the weight to be given to all of the evidence, including the testimony of witnesses." N.T., 2/26/14, at 11-12. The trial court expressly instructed the jury as follows.

- 23 -

> [Y]ou are the sole judges of the facts. … You are not bound by nor should you consider any opinion which you might think counsel **or I** have expressed concerning either guilt or innocence. Credibility of the witnesses, weight of the evidence, facts proven by the evidence or inferences to be drawn from those facts. … **I may question some of the witnesses myself. The questions will not reflect, nor are they intended to reflect, any opinion on my part about the evidence or about the case. My only purpose will be to inquire about matters which, in my opinion, should be more fully explored**.

*Id*. at 13-14. Based on both the legal authority and record before us, we find no abuse of discretion in the trial court's denial of Appellant's request for a mistrial.

Next, we review Appellant's fourth issue, in which he argues that the trial court imposed an illegal sentence relative to his conviction for conspiracy to commit murder, because "there was insufficient evidence to support a finding that the victim suffered 'serious bodily injury.'" Appellant's Brief at 10. The Commonwealth concedes that Appellant is entitled to a new sentencing hearing because his sentence "is contrary to statutory requirements." Commonwealth's Brief at 32. Both parties agree that the jury did not determine that serious bodily injury resulted from the victim's shooting, such that Appellant should have faced a mandatory maximum of 20 years' incarceration, rather than a maximum of 40 years' incarceration,

as provided in 18 Pa.C.S.A. § 1102(c).[8]   Appellant's Brief at 23-26; Commonwealth's Brief at 34.   Upon review, we agree that Appellant's sentence of 17-34 years' incarceration for conspiracy to commit murder is illegal.   We thus vacate Appellant's June 5, 2014 judgment of sentence in its entirety, noting that our disposition upsets the overall sentencing scheme. **Commonwealth v. Thur**, 906 A.2d 552, 569 (Pa. Super. 2006) (explaining where appellate disposition upsets the overall sentencing scheme of the trial court, remand is warranted so that the trial court can restructure its sentence), *appeal denied*, 946 A.2d 687 (Pa. 2008).

Finally, given our disposition and remand relative to Appellant's fourth issue, we decline to review Appellant's fifth and final issue challenging the discretionary aspects of his sentence because it is moot.

The December 2, 2013 judgment of sentence is affirmed.  The June 5, 2014 judgment of sentence is vacated.   Case remanded for re-sentencing. Jurisdiction relinquished.

---

[8] **(c) Attempt, solicitation and conspiracy.--**Notwithstanding section 1103(1) (relating to sentence of imprisonment for felony), a person who has been convicted of attempt, solicitation or conspiracy to commit murder, murder of an unborn child or murder of a law enforcement officer where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years.  Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years. 18 Pa.C.S.A. § 1102.

Judge Musmanno joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/6/2016