J-S38025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| PAUL LITTLE | : | |
| Appellant | : | No. 2634 EDA 2023 |

Appeal from the PCRA Order Entered September 11, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0000735-2018

BEFORE:   STABILE, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                          **FILED JANUARY 8, 2025**

Paul Little ("Little") appeals from the order entered by the Lehigh County Court of Common Pleas dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  Little raises several challenges to trial counsel's stewardship, and a time credit claim.  We affirm.

A jury convicted Little of three drug offenses, all of which related to the discovery of approximately 500 grams of cocaine within a hidden compartment of a vehicle driven by Little.  Pennsylvania State Police Trooper Brian Konopka was observing westbound traffic on Interstate 78 when he observed a Nissan Versa with dark tint on its rear passenger window and rear

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

windshield. Trooper Konopka followed the vehicle and effectuated a traffic stop. During the stop, Little, the driver and sole occupant, stepped outside the vehicle as ordered. In the ensuing conversation, Trooper Konopka asked Little about his travel plans. Little claimed to be traveling from New York City to Roanoke, Virginia on a business trip. Based on Little's demeanor, the presence of multiple air fresheners, and the absence of luggage, clothing, or bags, in addition to the frequent use of Interstate 78 by drug traffickers, Trooper Konopka suspected that Little was trafficking drugs and requested a police dog to sniff the vehicle.

Trooper Daniel Reed and his canine partner, Canine Edo, arrived on scene approximately one hour after the initial stop. Based on Canine Edo's alerts and indications, Trooper Konopka located what appeared to be a hidden compartment underneath the rear passenger seat. The troopers could not confirm this with the tools they had on hand, and the vehicle was therefore towed to the nearby barracks. Trooper Konopka used a scope and electronic device to open the compartment and located the cocaine alongside 498.96 grams of phenacetin, a common cutting agent. An expert witness estimated at trial that the street value of the cocaine was between $25,000 to $37,500 uncut, and approximately $50,000 to $75,000 when cut with the phenacetin.

Little, through trial counsel, Attorney Paul G. Lang, filed a motion to suppress, claiming that the traffic stop was unlawfully extended beyond the scope of its initial investigative purpose relative to the window tint violation.

Attorney Lang did not, however, assert that Trooper Konopka's initial traffic stop was invalid. The trial court denied the motion.

The parties proceeded to a jury trial. Little's primary defense was that he did not know the drugs were there, and that his uncle Alonzo Williams, who died on April 20, 2018, had put them in the vehicle. Sharon Patterson, Little's aunt and the owner of the vehicle, provided the basis for this defense. Before she took the stand, the Commonwealth requested an offer of proof. Little informed the court that Patterson would testify that Williams spent money well beyond what his monthly pension would support. Additionally, Patterson would say that Williams frequently used the car and worked as an electrician, and therefore was capable of installing the hidden compartment. Little also intended to introduce statements made by Williams to Patterson prior to his death, in which he admitted to placing the drugs in the vehicle.

The trial court excluded the statements taking ownership of the drugs, rejecting Little's arguments that the statements qualified as statements against his penal interest. Patterson was allowed to testify to her observations that Williams spent beyond his means. She informed the jury that Williams frequently used the car to take her son to Amateur Athletic Union ("AAU") basketball tournaments, and that he paid for those expenses. She stated that to "join AAU basketball it starts at $3,500 and I don't know what the other expenses are, but that's to join." N.T., 2/5/2019, at 111. Before the

Commonwealth began its cross, the trial court interjected, questioning Patterson about the AAU fees.

> THE COURT: Before you cross, I just happened to look up AAU. The membership fee is $14 for the year. Can you explain the discrepancy?
>
> THE WITNESS: My husband told me he was spending a lot of money for my son's AAU basketball tournaments.
>
> THE COURT: No. You said it cost $3,500.
>
> THE WITNESS: Yes. That's what he told me he spent.
>
> THE COURT: Okay. You would agree with me that, on the screen, it says "membership $14 for the year."
>
> MR. LANG: Well, Judge, I would like her to look at the screen.
>
> THE COURT: I'm showing it to her.
>
> MR. LANG: But is it AAU, New York? There's a lot of different AAU's.
>
> THE COURT: It is AAU National.
>
> MR. LANG: Well—
>
> THE COURT: There is only one AAU. I'm going to abandon that.
>
> MR. LANG: Yes, your Honor.
>
> THE COURT: I'm putting it out there because I googled it—
>
> MR. LANG: Yes, your Honor.
>
> THE COURT: —while you were talking about a fee for a juvenile sports team for youths in New York being $3,500.
>
> MR. LANG: And that's for tournaments as well, your Honor. She said that.
>
> THE COURT: She said that was the membership fee. The jury will recollect the way they will recollect. ….

*Id.* at 115-17.

Ultimately, the jury convicted Little, and the trial court sentenced him to seven and one-half to twenty years of imprisonment. On direct appeal, Attorney Jason Parris represented Little. Attorney Parris argued on appeal, among other issues, that the trial court's questions violated his due process right to a fair and impartial trial and that the warrantless search of the vehicle was illegal under *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014), *overruled by Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020). We deemed both of those claims waived as they were not included in the Rule 1925(b) statement. *Commonwealth v. Little*, 1444 EDA 2019, 2020 WL 6059831 (Pa. Super. Oct. 14, 2020) (non-precedential decision), *appeal denied*, 252 A.3d 592 (Pa. 2021).

Little commenced these proceedings by filing a counseled, timely PCRA petition on January 18, 2022, raising a series of claims challenging Attorney Lang's performance, stating that he was "utterly ineffective, committing error after error that individually and collectively crushed any chance" of success at trial. PCRA Petition, 1/19/2022, at i. The PCRA court held an evidentiary hearing, at which several witnesses testified, including Attorneys Lang and Parris. The PCRA court denied relief. Little appeals, raising the following issues for our review:

> 1. Did the hearing court err when it found that the trial court's improper cross examination and questioning the credibility of a defense witness and introducing evidence sua sponte was harmless error? Did appellate counsel render ineffective assistance of counsel when he did not preserve the issue in [] Little's § 1925 statement?

- 5 -

2. Did the hearing court err when it held that Ms. Patterson's testimony regarding her husband's statement against penal interest did not meet the hearsay exception? Was appellate counsel's failure to preserve this issue on the § 1925 statement the result of ineffective assistance of counsel?

3. Because [] Little's case was not final on direct review, was **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020) applicable? Alternatively, were trial counsel and appellate counsel ineffective for failing to raise the claim at the trial level and in [] Little's § 1925 statement?

4. Did trial counsel render ineffective assistance of counsel in several respects relating to [] Little's motion to suppress:

   a. Was trial counsel ineffective when he failed to move to suppress the evidence based upon the unlawful arrest of [] Little after Trooper Konopka admitted that [] Little was free to leave because there was no probable cause to arrest him?

   b. Did trial counsel render ineffective assistance of counsel when he failed to use the dashcam to impeach Trooper Konopka regarding his belief he knew [] Little and prove that Trooper Konopka was instructed by an assistant district attorney to secure a search warrant?

   c. Did trial counsel rendered [sic] ineffective assistance of counsel when he failed to challenge the probable cause of the car stop based upon the window tint statute. 75 Pa CS § 4524. Alternatively, the window tint statute is unconstitutionally vague[.]

5. Did the cumulative errors in the case [at] bar warrant a vacatur of [] Little's conviction as each one of the errors resulted in prejudice?

6. [] Little's time in Pennsylvania must run concurrently to his federal sentence[.]

Little's Brief at 9-10.

"We review the denial of PCRA relief by examining whether the PCRA court's conclusions are supported by the record and free from legal error." **Commonwealth v. Johnson**, 289 A.3d 959, 979 (Pa. 2023). Where, as

here, the PCRA court's determinations are premised upon conclusions of law, we employ a de novo review. *Id.*

The majority of Little's claims challenge the effectiveness of his prior attorneys. Counsel is presumed effective, and the petitioner must satisfy three prongs to prevail. ***Commonwealth v. Drayton***, 313 A.3d 954, 960 (Pa. 2024).

> To succeed on a claim asserting the ineffective assistance of counsel, as is raised here, a petitioner must rebut that presumption by pleading and proving, by a preponderance of the evidence, three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction.

***Commonwealth v. Rizor***, 304 A.3d 1034, 1051 (Pa. 2023) (citations omitted). "Respecting prejudice, we employ the … actual prejudice test, which requires a showing of a reasonable probability that the outcome of the proceeding would have been different but for counsel's constitutionally deficient performance." ***Commonwealth v. Daniels***, 104 A.3d 267, 281 (Pa. 2014).

Little's first claim concerns the trial court's sua sponte cross-examination of Sharon Patterson. Little's Brief at 35-42. He asserts that direct appeal counsel was ineffective for failing to include the claim in the Rule 1925(b) concise statement, thereby waiving the claim on direct review. *Id.* at 35.

Significantly, the PCRA court deemed this issue waived because of trial counsel's failure to object or move for a mistrial. **See** PCRA Court Opinion, 11/22/2023, at 11 ("Trial counsel neither objected nor requested a mistrial after Judge Dantos' questions. The issue was waived."). The PCRA court alternatively addressed the issue on the merits, finding "[e]ven if requested, the questions posed by Judge Dantos did not warrant a mistrial." **Id.** While the PCRA court "concede[d] that the trial judge should not have conducted her own research," the court determined that, on balance, she did not act as "an advocate for the Commonwealth." **Id.** at 12. Thus, the "short foray into AAU fees did not warrant a new trial." **Id**. at 13.

The Commonwealth does not defend the remarks and agrees that Little has waived this claim, albeit on a different rationale than the PCRA court's conclusion. **See** Commonwealth's Brief at 17. The government highlights that a PCRA petitioner bears the burden of proof and cannot prevail "by merely intoning the words 'counsel was ineffective' without providing the required legal analysis." **Id.** at 20 (citation omitted). In its view, Little simply "focus[es] on the underlying claims of trial court error," which falls short of meeting his burden of proving that direct appeal counsel was ineffective. **Id.** "Because he has not properly developed any argument regarding the reasonableness of counsel's actions or how he was prejudiced, defendant's claims of appellate counsel ineffectiveness … necessarily fail." **Id.**

Little does not address the trial court's waiver analysis and baldly claims that trial counsel did object to the trial court's questions: "Trial counsel did object but did not move to recuse the trial court or request a mistrial." Little's Brief at 35 n.10. He largely devotes his argument to the question of trial court error, litigating the claim as if this Court was addressing the claim on direct appeal. *See Commonwealth v. Blakeney*, 108 A.3d 739, 749–50 (Pa. 2014) (noting to establish prejudice, a petitioner must "show that there is a reasonable probability that the outcome of the direct appeal proceeding would have been different but for counsel's deficient performance"). He cites the general principle that "it is improper for the trial judge to suggest disbelief of testimony through questioning." *Id.* at 37 (citing *Commonwealth v. King*, 549 A.2d 195, 197 (Pa. Super. 1988)). He claims that because of the trial court's cross-examination "the jury had been 'inordinately impressed by this evidence of the judge's opinion such that the defendant [was] deprived of a fair and impartial trial.'" *Id.* (quoting *Commonwealth v. Hammer*, 494 A.2d 1054, 1060-61 (Pa. 1985), *overruled on other grounds by Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002)).

In support of his claim, Little relies upon *Commonwealth v. Toombs*, a case in which the trial court interjected during the prosecutor's cross-examination of the defendant's alibi witness, and this Court held that the "questioning by the trial judge must have influenced the jury's opinion of the witness's credibility. Since [Toombs]'s defense was one of alibi, the judge's

action prejudiced [his] case." **Commonwealth v. Toombs**, 409 A.2d 876, 879 (Pa. Super. 1979). Little describes Patterson's testimony as comparable to an alibi witness as that testimony, if believed, "established that other people had access to the vehicle and that her husband had the means, potential motive, and opportunity to not only store the cocaine in the car, but also build the hidden compartment himself." Little's Brief at 38. Therefore, he concludes that the trial judge's questioning prejudiced his defense by conveying to the jury her opinion that Patterson was not a credible witness. **Id.**

We agree with the PCRA court that the underlying claim was waived. As counsel cannot be ineffective for failing to present a waived claim, his claim of appellate counsel ineffectiveness necessarily lacks arguable merit as it "is merely a derivative claim" relating back to the trial court proceedings. **Commonwealth v. Duffey**, 855 A.2d 764, 769 (Pa. 2004). Little's attempt to evade the PCRA court's straightforward waiver finding is confounding. He faults the PCRA court for not "analyz[ing] whether appellate counsel ... was ineffective for failing to argue [] Little's claims," Little's Brief at 36, but its conclusion that the underlying claim was waived forecloses any claim of appellate counsel ineffectiveness. Little chooses to emphasize the testimony of Attorney Parris, who "conceded that he was ineffective for his failure to make these arguments based upon the trial court's denial of his motion for an extension to file [] Little's supplement[al] § 1925 statement." **Id.** Counsel's subjective belief is not dispositive, as whether counsel was ineffective is a

legal conclusion, which Little must plead and prove before relief may be granted. ***Cf. Commonwealth v. Brown***, 196 A.3d 130, 145 (Pa. 2018) (Refusing to accept prosecutor's concession of error as "the PCRA requires judicial merits review favorable to the petitioner before any relief may be granted. A confession of error ... is insufficient for any grant of relief under the PCRA."). In any event, the theory would not help Little as Attorney Parris also concluded that this claim was waived. He testified as follows regarding the cross-examination claim:

> You know, like, maybe the most kind of shocking thing going through the trial notes was at one point, the trial judge does a Google search and starts cross-examining the only defense witness.
>
> I, you know, was just - I mean, I'll be perfectly honest, as a, you know, career defense attorney, I found it a little offensive, and I thought this has to be a violation of due process, and did the research, and it was.
>
> **It wasn't preserved by trial counsel**. He was required to have asked for a recusal to preserve that issue[.]

N.T., 9/7/2022, at 87 (emphasis added).[2]

Attorney Parris is correct—the record reflects that trial counsel did not object or make any request for relief before the trial court based upon the

---

[2] Attorney Parris explained that he raised the claim anyway because "it seemed like an obvious enough error ... that I wanted to see if I could get some sort of opinion ... to set up a potential PCRA." N.T., 9/7/2022, at 87. Attorney Parris noted that this Court often decides issues in the alternative, and "if you get the panel saying, all right, this is waived, but here's a couple paragraphs on why it's not meritorious anyway, great. I'm not gonna bother including that in a PCRA." ***Id.*** at 92.

judge's questioning of Patterson. N.T., 2/5/2019, at 115-17.[3] The failure to move for a mistrial or object in any fashion generally waives a claim for appellate review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").[4] Thus, even if the trial court had granted Attorney Parris' request for an extension of time to file a Rule 1925 statement, the fact remains that Attorney Parris could not have done anything to remedy trial counsel's failure to object. Little could have pursued a claim of trial counsel ineffectiveness in that regard in these proceedings, but he failed to do so. As such, no relief is due on this claim of appellate counsel's ineffectiveness.

---

[3] As best this Court can discern, Little concludes that the underlying claim was preserved because on direct appeal, the panel cited the failure to include the claim in the Rule 1925(b) statement as the basis for waiver. Our silence as to the question of preservation before the trial court, however, does not equate to a conclusion that the underlying claim was preserved.

[4] We observe that the law does not foreclose the notion that trial counsel was not, in fact, required to object under these circumstances. In *Commonwealth v. Hammer*, our Supreme Court recognized that in circumstances of a trial judge's impertinent questioning of a witness, "the rationale underlying the waiver doctrine, that timely objection gives the court the opportunity to cure the error, becomes a relatively empty one," and ultimately overlooked trial counsel's failure to object to decide the issue on its merits. *Hammer*, 494 A.2d at 1059. In *Commonwealth v. Colon*, however, we found that the exception announced in *Hammer* was overruled by *Commonwealth v. Grant*. *Commonwealth v. Colon*, 31 A.3d 309, 316 (Pa. Super. 2011). The *Colon* decision was decided on direct appeal and thus does not necessarily control in this context. Little, however, does not raise this claim, let alone discuss these principles in response to the PCRA court's waiver analysis. We decline to transform his argument that the issue was preserved into a legal conclusion that counsel did not need to object.

Little's second point of error argues that appellate counsel was ineffective for failing to pursue on direct appeal a claim that the trial court erroneously precluded Patterson from testifying to Williams' statements claiming ownership of the drugs. Little's Brief at 43-50. Little argues that Williams "admitted to his wife that [Little] should not be locked up for the drugs that were in the car," and that the statement was made under circumstances that indicate its reliability. *Id.* at 47. Little argues that Williams was dying at the time he made the statements, which indicates "a crisis of confidence and an attempt to settle affairs before he died." *Id.* at 49. In Little's view, Williams' failure to go to the authorities "only strengths [sic] the reliability here – he was afraid to die in prison." *Id.* at 49.

Little attempted to introduce his statements through the hearsay exception codified at Pennsylvania Rule of Evidence 804(b)(3), which defines a statement against interest as a statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Pa.R.E. 804(b)(3).[5]  The trial court excluded the testimony, finding that the statement lacked corroborating circumstances of trustworthiness.

We conclude that Little fails to establish that a challenge to this ruling had any prospect of success.  Little argues the issue as if presenting it to the trial court in the first instance.  **See** Little's Brief at 47-49.  To succeed on direct appeal, however, counsel would have had to show that the trial court's exclusion of this testimony was an abuse of discretion.  **See Commonwealth v. Benson**, 10 A.3d 1268, 1275 (Pa. Super. 2010) (recognizing that this Court reviews claims that the trial court erroneously excluded testimony that the appellant claimed was a statement against penal interest for an abuse of discretion).  "An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power."  **Commonwealth v. Norton**, 201 A.3d 112, 120 (Pa. 2019); **see also Commonwealth v. DiStefano**, 265 A.3d 290, 298 (Pa. 2021) (reversing this Court's decision reversing a discretionary ruling, and explaining that this Court "never described the particulars of the 'abuse of discretion' standard nor did the intermediate court specifically explain how the trial court abused its discretion").  Thus, to succeed on a claim of counsel's

---

[5] There is no dispute that the threshold requirement that the witness be unavailable was satisfied due to Williams' death.  Pa.R.E. 804(a)(4).

ineffectiveness to raise this argument on direct appeal, Little's argument before this Court must, at bottom, explain how the trial court abused its discretion, not just persuade us that there was a viable basis for the trial court to accept the evidence. He fails to frame argument in those terms.

Presuming that the aforementioned failure has not waived the claim, Little fails to show the issue has arguable merit. Indeed, we discern no potential abuse of discretion in the trial court's implicit recognition that statements made by a defendant's deceased relative as relayed by another relative are inherently suspect. *See Commonwealth v. Bracero*, 528 A.2d 936, 941 (Pa. 1987) ("'Telling a story' to help a friend or relative to 'beat the rap,' can not be viewed as an extraordinary occurrence."). Typically, a statement against penal interest is made to someone in a position of authority. *See Commonwealth v. Statum*, 769 A.2d 476, 480 (Pa. Super. 2001) (holding that statement by third party claiming ownership of drugs was a statement against penal interest; "Scalia's statement was made to a reliable person of authority under circumstances that would assure trustworthiness and reliability"). Little's argument that Williams' failure to inform the authorities that he put the drugs in the car somehow bolsters the reliability of the statement conflicts with this longstanding case law, and Little fails to make any argument distinguishing these cases.

Finally, we note that Little discusses *Holmes v. South Carolina*, 547 U.S. 319 (2006), to support his claim that Williams' statement against interest

was improperly excluded. Broadly stated, the **Holmes** decision recognized that state evidentiary rules precluding evidence may violate the constitutional right "to present a complete defense," **id.** at 324, if the specific rule infringes upon a weighty interest of the accused and is arbitrary or disproportionate to the purposes the rule is designed to serve. **Id.** at 319-20. We decline to address this argument, as Little did not raise a claim that application of Pa.R.E. 803 unconstitutionally interfered with his right to present a defense. He argued that the statements met the exception, not that the Rule as applied abridged his constitutional rights. Only the former claim was preserved.

Little's third issue raises two distinct subclaims, both of which concern the warrantless search of his vehicle. Little's Brief at 50. The first subclaim is that **Alexander**, which rejected the federal automobile exception as previously adopted by the Court in **Gary**, applies to his case since it was published while his case was on direct appeal. **Id.** at 52. The second subclaim argues that if **Alexander** did not apply then his attorneys ineffectively failed to challenge the warrantless search at the police barracks under **Gary**. **Id.** at 55-56.

We readily dispose of both claims. Beginning with the applicability of **Alexander**, there is no doubt that new rules must be applied to cases then-pending on direct review. **See generally Griffith v. Kentucky**, 479 U.S. 314, 322 (1987) (holding that the "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic

norms of constitutional adjudication"). However, our Supreme Court has imposed a requirement that the claim be preserved at the trial court level. *See Commonwealth v. Cabeza*, 469 A.2d 146, 148 (Pa. 1983) ("[W]here an appellate decision overrules prior law and announces a new principle … the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal."); *see also Commonwealth v. Hays*, 218 A.3d 1260, 1266-67 (Pa. 2019) (applying *Cabeza* and holding that a change in law occurring the day after trial did not apply on direct appeal because the appellant failed to preserve that claim before the trial court).

Little claims, without further explication, that the precedent requiring issue preservation in these circumstances "runs afoul of the United States Supreme Court precedent that a new rule is always applicable to cases that are pending on direct review[.]" Little's Brief at 54-55. Contrary to Little's undeveloped assertion, the High Court has recognized that States are free to consider jurisprudential concerns (including waiver) when deciding whether a litigant may benefit from changes in the law decided during the pendency of his appeal. *See, e.g., Hays*, 218 A.3d at 1267 (Saylor, C.J., concurring) ("[T]he Supreme Court of the United States has specified that federal retroactivity analysis does not preclude reviewing courts from applying ordinary prudential doctrines, determining, for example, whether the issue was raised below[.]") (cleaned up).

The record reflects that trial counsel never raised a challenge to the applicability of the federal automobile exception. *See* Brief in Support of Pre-Trial Motions, 12/18/2018 (no discussion of warrantless search). Accordingly, the *Alexander* decision does not apply to the warrantless search of Little's vehicle, and appellate counsel cannot be deemed ineffective for failing to raise the claim on direct review.

We next turn to Little's contention that trial counsel and direct appeal counsel both ineffectively failed to argue that the warrantless search of the vehicle at the barracks was unconstitutional under *Gary*. Little's Brief at 62. Little maintains that the federal automobile exception relies on the inherent mobility of a vehicle, which cannot justify the warrantless search because that search occurred after the car was impounded and in police custody. *Id.* ("Once the car was in the custody of the Pennsylvania State Police, its inherent exigency had ended.").

The United States Supreme Court has made clear that inherent mobility is not the only justification for its automobile exception to the warrant requirement. As set forth in *Gary*, the High Court "articulated a second justification for the warrantless search of a motor vehicle, to wit, the diminished expectation of privacy in a motor vehicle as compared to a residence or office, due to the pervasive governmental regulation of, and local law enforcement's extensive contact with, motor vehicles." *Gary*, 91 A.3d at 110. That the "inherent mobility" rationale is not the exclusive justification

for a warrantless automobile search is illustrated by **Michigan v. Thomas**, 458 U.S. 259 (1982), which upheld a search of a vehicle in police custody after it had already been inventoried. **See also Florida v. Meyers**, 466 U.S. 380, 382–83 (1984) (per curiam) (holding that **Thomas** authorized search of a vehicle eight hours after it had been impounded and placed in secure police custody). Therefore, Little's ineffectiveness claim on this basis has no arguable merit.

Little's fourth claim, which includes three subclaims, challenges trial counsel's litigation of the suppression motion. Little's Brief at 65-77. As an overarching matter, however, we note that Little fails to address the reasonable strategic basis prong of the ineffectiveness test. The law is clear that counsel is entitled, in the exercise of their professional judgment, to pursue some claims to the exclusion of others. **See Dunn v. Reeves**, 594 U.S. 731, 739 (2021) ("[W]e have often explained that strategic decisions— including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness."). The record reflects that Attorney Lang sought suppression on the basis that the traffic stop was impermissibly extended beyond its purpose. "A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Commonwealth v. Howard**, 719 A.2d 233, 237 (Pa. 1998). The prejudice prong in this context thus requires proof that the foregone grounds for

suppression were so clearly meritorious that no competent attorney would fail to pursue them. ***See Kimmelman v. Morrison***, 477 U.S. 365, 382 (1986) ("Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim … a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief."). Little fails to argue, let alone prove, that any of the three subclaims reaches this standard. Nonetheless, even ignoring this omission, his assertions do not entitle him to relief.

In his first subclaim, Little contends that trial counsel ineffectively failed to challenge whether Little was unlawfully arrested. Little's Brief at 67. Trooper Konopka initially informed Little that he was free to leave but arrested him shortly thereafter. ***See id.*** at 68.[6] Little does not address whether probable cause existed for the arrest, nor does he address the fact that Little chose to remain on scene. ***See*** N.T., 11/19/2018, at 27 (Trooper Konopka testifying at suppression hearing that "[] Little told me that he did not want to leave his car"). Presuming for sake of discussion that this claim has arguable merit, Little fails to develop any argument that this would result in suppression of the drugs, and he therefore cannot establish prejudice. ***See Kimmelman***, 477 U.S. at 375 (holding that, to establish prejudice relative to a suppression motion, the litigant must establish that the "Fourth Amendment

---

[6] The Commonwealth concedes that Little was told he was free to leave only because Trooper Konopka was initially unable to confirm that a trap was present. Once he "received instructions and located the trap under the rear passenger seat," the trooper arrested Little. Commonwealth's Brief at 38.

claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence").

The only evidence introduced against Little was the drugs found in the car, and that search was entirely independent of the arrest. Thus, the search would have occurred even if Little had left the scene. Additionally, nothing was discovered as a search incident to Little's arrest, nor did Little make any statements. Thus, the drugs would remain admissible even if Little could show that his arrest was illegal, as "the necessity for deterrence does not reach so far as to immunize defendants from prosecution, or to require forever banning evidence from the courtroom." *Commonwealth v. Santiago*, 209 A.3d 912, 923 (Pa. 2019). Because the Commonwealth could "show that it obtained the challenged evidence by lawful means and from a source independent of the illegality," *id.*, any failure to challenge the arrest did not prejudice Little.

The second subclaim is that trial counsel was ineffective for failing to use portions of the dashcam video in which Trooper Konopka stated (1) outside of Little's hearing that he recognized Little from a prior interaction and (2) that an assistant district attorney told him to obtain a search warrant. *Id.* at 70. Little fails to establish a reasonable probability that this evidence would have changed the outcome. Whether Trooper Konopka knew Little from past interactions has no discernible relevance, and he denied the assertion that he requested a canine search on that basis. N.T., 1/26/2023, at 26. As to the warrant, Little argues: "[Trooper Konopa] <u>was instructed to get a warrant by</u>

an assistant district attorney. Counsel's failure to use this concession by Trooper Konopka is inexcusable ... [as] any attorney would have used this powerful evidence to support the attorney's argument that the warrant exception did not apply in the case at bar." Little's Brief at 72 (emphasis in original). We disagree. As explained, pursuant to **Gary**, at the time of Little's trial a warrant was not required as a matter of law and thus whether Trooper Konopka was instructed to obtain one is irrelevant.[7] Therefore, subclaim two lacks arguable merit.

The third and final subclaim is that Attorney Lang ineffectively "did not challenge the validity of the initial car stop based upon Trooper Konopka's erroneous position that [] Little violated 75 Pa. C.S. [§] 4524, which is Pennsylvania's window tint statute." Little's Brief at 73. The relevant portion of the statute in question states that no person "shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S. § 4524(e)(1).[8] According to

---

[7] At the PCRA hearing, Trooper Konopka stated that the prosecutor later called back and told him that a warrant was not needed. N.T., 1/26/2023, at 45-46.

[8] Little's argument proceeds from the premise that the Commonwealth needed to establish that he was guilty beyond a reasonable doubt of violating the statute. However, the actual question is whether Trooper Konopka was entitled to seize Little's vehicle based on his observations. **See Commonwealth v. Prizzia**, 260 A.3d 263, 269 n.2 (Pa. Super. 2021) *(Footnote Continued Next Page)*

Little, "Attorney Lang testified, after viewing the photographs of the car that [] Little was driving, that the driver would have been visible through the windows of the car." Little's Brief at 75.

Little does not cite the portion of the record in which Attorney Lang testified. His brief is presumably referencing this exchange that occurred at the PCRA hearing:

> Q. Do you recall Trooper Konopka testifying that he could not see inside the vehicle?
>
> A. I believe that was his testimony, yes.
>
> Q. All right. And just taking a look at those photos now in evidence, what do you notice about the front windshield and the front passenger and driver side?
>
> A. The front windows are clear. Apparently, no tint or no tint compared to the back tint.

N.T., 1/10/2023, at 22.

The brief's vague reference to "windows of the car" misleadingly suggests that Attorney Lang agreed that an observer could see through **all** the windows, whereas Attorney Lang merely conceded that the front windows were not excessively tinted. As established in our decision on direct appeal, Trooper Konopka cited the inability to see through the rear windows as the

_____

(reserving the possibility that the reasonable suspicion standard, as opposed to probable cause, could apply depending on the facts of the case if "the officer's testimony demonstrates that he or she stopped the vehicle to get a closer and/or unobstructed view of the windows, in further investigation of whether the tint violates section 4524(e)(1)"). We could deem the claim waived for failing to address the correct point of law. As it is clear the underlying claim lacks arguable merit, however, we decline to do so.

basis for the stop. **See Little**, 2020 WL 6059831, at 1-2. ("Trooper Konopka observed a black Nissan Versa with dark aftermarket tint on its rear passenger windows and rear windshield in violation of the Motor Vehicle Code[.]"). Trooper Konopka reiterated this point at the PCRA hearing:

> Q. All right. And so you -- you stopped – the stop was specifically that the back three windows were tinted? That was the basis of your stop?
>
> A. Yes. The window tint was why -- the reason for the stop. Right.
>
> Q. But you would have been able to see inside the car through the front windows; isn't that right?

N.T., 1/26/2023, at 21. As this exchange shows, Little focuses on whether one can view the vehicle's interior from any one window but does not connect this argument to the statutory text, which by its terms applies to "the windshield, side wing or side window" as separate windows. 75 Pa.C.S. § 4524(e)(1). We thus conclude that his ineffectiveness claim lacks arguable merit.

Little alternatively asserts that the statute is unconstitutionally vague. Little's Brief at 75-77. The basic claim is that "there is no specification in the statute as to which windows have to allow a person to see into the vehicle." **Id.** at 76. This claim is so woefully undeveloped that we deem it waived. **Banfield v. Cortes**, 110 A.3d 155, 168 (Pa. 2015) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citation omitted).

Little's fifth claim is that he was cumulatively prejudiced by the preceding allegations of ineffectiveness. Little's Brief at 77. We have determined that the majority of these claims are either waived or lack arguable merit. "[W]here claims are rejected for lack of arguable merit, there is no basis for an accumulation claim." *Commonwealth v. Sattazahn*, 952 A.2d 640, 671 (Pa. 2008). We also do not agree that the claims which we have rejected on prejudice grounds collectively warrant relief. "To the extent that individual dispositions have centered on the absence of sufficient prejudice to give rise to relief on an individual basis, we are also satisfied that prejudice would be lacking on a collective basis relative to those claims as well." *Id.*

Little's final claim argues that he was entitled to time credit. We agree with the PCRA court that this claim was waived, as set forth in its opinion:

> [Little] also raised in his PCRA petition and Concise Statement that his state sentence should be running concurrently with the federal sentence he is serving. A review of transcripts from the proceedings in this matter reveals that although argument was presented on this issue, the only evidence submitted into the record was the defendant's testimony that he believed his sentences were running concurrently. *See* N.T. PCRA, November 30, 2022, at pp. 104-05. Without more, this Court was unable to offer relief, and the issue is waived for review on appeal.

PCRA Court Opinion, 11/22/2023, at 12 n.19.

Before this Court, Little's argument on this issue states, in total:

> Here, the United States District of New Jersey has held that [] Little's federal sentence will run concurrently with his Pennsylvania state sentence. The hearing court was confronted with this evidence, which went unrefuted by the Commonwealth.

> The hearing court even confirmed when [] Little's bail was exonerated and should be credited with his time once he was brought from federal custody to Pennsylvania custody. As such, [] Little should receive credit for all the time he has remained in custody, whether in Pennsylvania or federal custody.

Little's Brief at 78.

This tells us nothing about what "evidence" the Commonwealth allegedly failed to refute and lacks citations to the record. Our review of the record confirms the PCRA court's finding that Little's own testimony is the sole basis for this claim. *See* N.T.,11/30/2022, at 104 (Little stating that his federal sentence "was time served to run concurrent[ly] … with my state case"). The Commonwealth's failure to "refute" Little's self-serving statements does not relieve Little of his burden to plead and prove that he is entitled to relief.

Pointedly, Little does not explain what his federal sentence is, whether he was incarcerated after the instant crimes, or whether he was on supervised release. It is not clear what the order of the District Court states, as Little apparently did not enter it into the record. Additionally, in the argument summary section of his brief, Little states that his "federal sentencing judge sentenced [] Little concurrently with this case when [] Little was sentenced in early 2020." *Id.* at 34. This suggests that Little's issue lies with the federal court, as Little was sentenced in this matter on March 28, 2019.

Relatedly, Little fails to specify the periods of time for which he believes he is entitled to time credit, and he simultaneously claims that his entire sentence should run concurrently to some other (unidentified) sentence.

Indeed, it is not even clear that his claim is cognizable under the PCRA as we cannot discern if Little is asserting that he was entitled to the credit as a matter of law, which would constitute a cognizable sentencing claim, or that the relevant correctional authority is not awarding the credit, which is not. *See Commonwealth v. Heredia*, 97 A.3d 392, 393 (Pa. Super. 2014) ([T]he failure of the Department of Corrections … to award him credit for time served, in the face of the trial court's sentencing order expressly granting it … is not cognizable under the PCRA."). Little's argument does not cite any statute or caselaw to support his arguments. It is not this Court's job to discover the relevant authority and facts. *See* Pa.R.A.P. 2119(a) (argument shall include citation of authorities); *Commonwealth v. Armolt*, 294 A.3d 364, 376 (Pa. 2023) ("Moreover, regardless of whether a particular claim implicates the legality of a sentence, it is well settled that an appellant bears the burden of sufficiently developing his arguments to facilitate appellate review."). We therefore deem the claim waived.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/08/2025